# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP1715 |
| COMPLETE TITLE: | The Journal Times and Steve Lovejoy,<br>      Plaintiffs-Appellants-Cross<br>Petitioners,<br>    v.<br>City of Racine Board of Police and Fire<br>Commissioners,<br>      Defendant-Respondent-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 354 Wis. 2d 591, 849 N.W.2d 888)
(Ct. App. 2014 – Published)
PDC No: 2014 WI App 67

| | |
|---|---|
| OPINION FILED: | June 18, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 4, 2015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Racine |
| JUDGE: | Gerald P. Ptacek |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ABRAHAMSON, BRADLEY, J.J., concur. (Opinion Filed) |
| DISSENTED: | |
| NOT PARTICIPATING: | PROSSER, J. did not participate. |

ATTORNEYS:

For the defendants-respondents-petitioners, there were briefs by *Rebecca K. Mason, Racine, and Lauren L. Devine, University of Wisconsin law student.* Oral argument by *Rebecca Mason*.

For the plaintiffs-appellants-cross-petitioners, there were briefs by *Robert J. Dreps*, *Dustin B. Brown*, and *Godfrey & Kahn, S.C.,* Madison. Oral argument by *Dustin B. Brown.*

An amicus curiae brief was filed by *Thomas C. Bellavia, Assistant Attorney General and Clayton P. Kawski, Assistant Attorney General* with whom on the brief was *Brad D. Schimel, Attorney General,* for the Wisconsin Department of Justice.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2013AP1715
(L.C. No. 2012CV758)

STATE OF WISCONSIN                    :          IN SUPREME COURT

The Journal Times and Steve Lovejoy,

      Plaintiffs-Appellants-Cross Petitioners,

    v.

City of Racine Board of Police and Fire Commissioners,

      Defendant-Respondent-Petitioner.

**FILED**

**JUN 18, 2015**

Diane M. Fremgen
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1    ANNETTE KINGSLAND ZIEGLER, J.    This is a review of a published decision of the court of appeals,[1] which reversed the circuit court's[2] order dismissing the mandamus action and granting summary judgment to the City of Racine Board of Police and Fire Commissioners ("the Commission").

¶2    The Journal Times of Racine and its editor, Steve Lovejoy (collectively, "the Newspaper"), commenced this mandamus

---

[1] Journal Times v. City of Racine Bd. of Police & Fire Comm'rs, 2014 WI App 67, 354 Wis. 2d 591, 849 N.W.2d 888.

[2] The Honorable Gerald P. Ptacek, Racine County, presided.

action under Wis. Stat. § 19.37(1)(a) (2011-12)[3] of Wisconsin's public records law[4] after the Commission denied the Newspaper's request.  The request sought information pertaining to a special meeting that the Commission held in closed session on February 20, 2012.  The Newspaper is no longer seeking disclosure because the Commission provided the requested information and is in compliance with the request.  The Newspaper, however, seeks to recover reasonable attorney fees, damages, and other actual costs under § 19.37(2)(a) because, it argues, it prevailed "in whole or in substantial part" in this action.  Wis. Stat. § 19.37(2)(a).[5]

---

[3] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.  Wisconsin Stat. § 19.37(1)(a) provides:

> (1) Mandamus. If an authority withholds a record or a part of a record or delays granting access to a record or part of a record after a written request for disclosure is made, the requester may pursue either, or both, of the alternatives under pars. (a) and (b).

> (a) The requester may bring an action for mandamus asking a court to order release of the record.  The court may permit the parties or their attorneys to have access to the requested record under restrictions or protective orders as the court deems appropriate.

[4] See Wis. Stat. §§ 19.31 through 19.39.  The public records law is also known as the open records law.  We will use the term "public records law" in order to avoid confusion with the open meetings law.

[5] Wisconsin Stat. § 19.37(2)(a) provides, in pertinent part:

> [T]he court shall award reasonable attorney fees, damages of not less than $100, and other actual costs

2

¶3 The court of appeals reversed the circuit court's dismissal of the mandamus action. The Newspaper claims that the court of appeals erred, however, in remanding the matter to the circuit court for a determination of whether reasonable attorney fees, damages, and other actual costs should be awarded. The Newspaper argues that the award should instead be made as a matter of law. Both parties petitioned this court for review. Our analysis of the Newspaper's cross-petition is dispositive of the issues presented by both parties.

¶4 The Newspaper cross-petitioned this court for review, seeking to have this court hold that, as a matter of law, the Newspaper may recover reasonable attorney fees, damages, and other actual costs because it prevailed in this action "in substantial part." The Newspaper argues that the Commission's denial and lack of timely record production equate to violations of the public records law and open meetings law[6] such that the Newspaper has prevailed in substantial part as a matter of law.

¶5 Specifically, the Newspaper argues that an award under Wis. Stat. § 19.37(2)(a) is due because the Commission twice denied the request and misapplied the balancing test for denying a public records request.[7] The Newspaper argues that it filed

---

to the requester if the requester prevails in whole or in substantial part in any action filed under sub. (1) relating to access to a record or part of a record under s. 19.35 (1)(a).

[6] See Wis. Stat. §§ 19.81 through 19.98.

[7] See Hathaway v. Joint Sch. Dist. No. 1, City of Green Bay, 116 Wis. 2d 388, 402-03, 342 N.W.2d 682 (1984) (discussing the

3

this lawsuit to obtain a record that it was led to believe existed, but to which access was being denied.  The Newspaper also argues that the Commission did not timely respond to the request and that, when the Commission ultimately filed its answer to the summons and complaint, it revealed, for the first time, that a record did not exist.[8]  The Newspaper argues that, under Newspapers, Inc. v. Breier, 89 Wis. 2d 417, 279 N.W.2d 179 (1979), the Commission is barred from asserting that the record did not exist.  The Newspaper argues that the Commission's defense in the mandamus action is limited to the written reasons given in the denial.

¶6  On the other hand, the Commission argues that the Newspaper did not prevail in substantial part because the Newspaper, a sophisticated requester, requested information, not a record.  The Commission states that it provided the requested information even though it was not required to do so under the public records law.  The Commission argues that it could not have unlawfully denied the request because no record existed at the time of the request.  In short, the Commission argues that the public records law grants access to records, not

---

balancing test).

[8] "'Record' means any material on which written, drawn, printed, spoken, visual or electromagnetic information is recorded or preserved, regardless of physical form or characteristics, which has been created or is being kept by an authority."  Wis. Stat. § 19.32(2).  "'Record' includes, but is not limited to, handwritten, typed or printed pages, maps, charts, photographs, films, recordings, tapes (including computer tapes), computer printouts and optical disks."  Id.

4

information, and that the Newspaper did not prevail in its lawsuit because a court cannot require release of a record that does not exist.

¶7 We conclude that under the facts of this case, the Newspaper did not prevail in substantial part in this action and is therefore not entitled to reasonable attorney fees, damages, and other actual costs under Wis. Stat. § 19.37(2), because the Commission did not unlawfully deny or delay release of the subject record. Whether the Commission violated the open meetings law is not properly before the court because the Newspaper did not request a district attorney to commence an action under Wis. Stat. § 19.97. Under State ex rel. Blum v. Board of Education, School District of Johnson Creek, 209 Wis. 2d 377, 565 N.W.2d 140 (Ct. App. 1997), we may consider the Commission's defense that a responsive record did not exist at the time of the request even though the Commission first raised this defense in the mandamus action.

¶8 In other words, the Newspaper is not entitled to its requested relief because its request is not supported by the facts of this case or the law. Both parties contributed to any misunderstanding, if there was one, of what was being requested and the sufficiency of the responses. In any event, no responsive record existed at the time of the request and no record was produced because of the lawsuit. While a records request need not be made with exacting precision to be deemed a

valid public records request,[9] the Newspaper is a requester and wordsmith with experience and sophistication. Here, the requests could reasonably be perceived as seeking information, rather than a record. Although under no obligation to provide information in response to a records request, the Commission provided the Newspaper with the answers to its questions by providing information. Moreover, the subject request cites the open meetings law. The Commission initially denied the records requests but later agreed to provide, and did provide, the requested information. At the time of the request and at the time that the information was provided, no record existed that could have been responsive to the request. The Newspaper no longer seeks production of a record; it seeks only reasonable attorney fees, damages, and other actual costs under Wis. Stat. § 19.37(2)(a). Whether a record should have been in existence at the time of the request is a matter of the open meetings law, not public records law. Certainly the Commission cannot avoid a public records request by failing to timely create a record. In this case, however, the Commission responded to the Newspaper with reasonable diligence and released the requested information while maintaining that it was not legally required to do so and at a time when no record existed. Neither the facts nor the law support the conclusion that the Newspaper prevailed in "substantial part."

---

[9] See ECO, Inc. v. City of Elkhorn, 2002 WI App 302, ¶¶23, 26, 259 Wis. 2d 276, 655 N.W.2d 510.

6

I. FACTUAL AND PROCEDURAL BACKGROUND

¶9   The Commission is charged with the responsibility of hiring police officers and firefighters, including the chiefs of the City of Racine's police and fire departments.   The Commission consists of five members who are appointed by the mayor.   Its entire budget in 2012 was $23,650.

¶10   The Commission regularly holds only one meeting every two months.   The Commission rarely calls a special meeting.

¶11 The Commission's secretary, Keith Rogers ("Commissioner Rogers"), is primarily responsible for drafting the Commission meeting minutes.   He is a private citizen who volunteers his time to serve on the Commission.   He is not employed by the City of Racine or its police department.   He has employment in addition to his part-time volunteer position as a commissioner.

¶12   The Commission has a standard procedure for drafting and approving meeting minutes.   Typically, during a meeting, Commissioner Rogers takes notes on a template that outlines the meeting agenda.   He typically drafts minutes for a meeting within one week after that meeting.   However, sometimes he requires more time to draft meeting minutes because of his regular employment commitments.   After he drafts minutes, he usually sends them to the police chief's secretary, Dianne Flannery ("Flannery"), for review.   Flannery later distributes the draft minutes to all five commissioners.   The Commission typically reviews the draft minutes for approval at its next

regular meeting, which is held once every other month. The Commission never approves minutes at a special meeting.

¶13 In May 2011 the City of Racine's police chief, Kurt Wahlen, retired. Twenty-three people applied for the open police chief position. The Commission determined that 11 applicants met minimum requirements for the position, and it selected seven applicants for interviews. Two of those seven withdrew their names from consideration, so the Commission interviewed the five finalists.

¶14 By mid-February 2012 the Commission reduced the field of candidates to three finalists and publicly disclosed their identities. Two of the three finalists, Lieutenant Carlos Lopez ("Lopez") and Deputy Chief Arthel Howell ("Howell"), were racial or ethnic minorities and were already employed by the Racine Police Department. On Friday, February 17, 2012, the third finalist, Ronald Teachman ("Teachman"), withdrew his name from consideration. Teachman was not already employed by the Racine Police Department. The Commission called a special meeting to be held on the next business day to address Teachman's withdrawal.

¶15 On Monday, February 20, 2012, the Commission held that special meeting in closed session. The Commission voted to reopen the selection process for hiring a new police chief. Specifically, it voted to determine which of the original 11 applicants who met the minimum requirements were still

8

interested in the position. The Commission would consider these interested candidates again.[10]

¶16 On February 20, 2012, the same day as the special meeting, the Commission issued a press release. The press release stated that Teachman withdrew his application for the police chief position. It further stated that the Commission "determined that it preferred to have a broader pool of candidates moving forward. Therefore, the [Commission] has directed Springsted[11] to reengage with other candidates who applied for the Racine Chief of Police position. City of Racine Deputy Chief Arthel Howell and Lieutenant Carlos Lopez remain finalists for the position." The press release did not identify which commissioners made and seconded the motion to reopen the selection process for hiring a new police chief. The press release also did not state how many commissioners, or which commissioners, voted for or against the motion.

¶17 Also on February 20, the Newspaper published an article about the Commission's decision to reopen the selection process for hiring a new police chief. Christine Won ("Won"), a reporter for the Newspaper, authored the article.

¶18 On Wednesday, February 22, 2012, two days after the special meeting and press release, Won sent an e-mail to

---

[10] Two days later, on February 22, the Commission held a special meeting and voted to reverse its decision from the February 20 special meeting—that is, on February 22 it decided to pursue only Lopez and Howell for the police chief position.

[11] Springsted, Incorporated was the firm hired by the Commission to assist with finding a new police chief.

Commission President Charles Johnson, Commissioner Rogers, and Racine Deputy City Attorney Scott Letteney ("Attorney Letteney"), which stated, in relevant part:

Good morning Chuck, Keith,

I was told to make my open records request directly to the custodians so am asking you as the president and secretary of the commission respectively.

I am officially asking on the record to know the vote of each commissioner from the closed [Commission] meeting Monday[, February 20, 2012,] in which they decided to reopen the police chief search.

If you choose to deny, please provide a written explanation.

¶19 A few hours after sending that e-mail, Won sent a clarification e-mail to the same three recipients, which stated:

Chuck, Keith,

Under statute 19.88(3) —— I am asking for the recorded motions and votes of each PFC Commissioner at the closed meeting on Monday[, February 20], including who made the motion and who seconded it.

. . .

I would appreciate this information as soon as practicable and without delay.  If you choose to deny this request, please provide a written explanation.

¶20 It is undisputed that no record containing the requested information existed at the time of the requests. Commissioner Rogers, who would ordinarily be responsible for taking notes of the meeting on a template, did not attend the February 20 special meeting but instead appeared remotely via telephone.  He did not have his note-taking template with him

10

and did not take notes of the meeting as he normally would.[12] Accordingly, he did not draft minutes of the meeting.  Had he taken notes and drafted minutes, the Commission in its normal course of business would have circulated the draft minutes for approval at its next bi-monthly meeting.[13]

¶21 On Wednesday, March 7, 2012, Attorney Letteney responded and denied Won's requests:

On behalf of, and at the direction of, the [Commission]:

1. Your request for the specific vote of the [Commission], by member, taken in closed session on February 20, 2012 is denied.  The basis for this denial is State ex rel. Cities Service Oil Co. v. Board of Appeals, 21 Wis. 2d 516[,] 124 N.W.2d 809 (1963).  In that case, regarding voting in closed sessions, the Wisconsin Supreme Court held, at page

---

[12] The circuit court record does not explain where Commissioner Rogers was during the meeting.  An interrogatory question asked the Commission why he did not take notes on this meeting.  The answer stated that "Commissioner Rogers appeared at the subject February 20 meeting via telephone.  He did not have a copy of his 'minute-taking template' with him at his remote location."  We note that Commissioner Rogers has employment in addition to his part-time volunteer position on the Commission.  We also note that this February 20 special meeting was called on short notice.

[13] Under the Commission's ordinary course of business, it would not have reviewed minutes for the February 20 special meeting until its next regular meeting, which was held on Monday, March 19, 2012.  In fact, the agenda for the March 19 meeting, which was apparently released to the public on March 12, stated that the Commission planned to approve the draft minutes for the February 20 special meeting.  However, no draft minutes for the February 20 meeting were created prior to the March 19 meeting.  Thus, the February 20 minutes were approved at the Commission's next regular meeting, on May 22, 2012.

11

539, that "voting is an integral part of deliberating and merely formalizes the result reached in the deliberating process."

The Newspaper then asked the Commission to reconsider its decision denying the request.[14]

¶22 On Friday, March 9, 2012, in another e-mail from Attorney Letteney to Won, the Commission again denied the Newspaper's request. This time, the Commission's response stated that its denial was based on concerns for the safety of at least one commissioner due to the controversy surrounding the Commission's decision to reopen the selection process for hiring a new police chief. This e-mail stated:

> The City/[Commission] has a strong, good faith basis, founded in the law for denying the release of the vote of the [Commission] from its February 20, 2012 meeting. In addition, upon performing the required balancing test for the release of records, there is are [sic] significant public policy bases for denial of the records.
>
> (A) (Some) commissioner(s) have expressed reasonable concerns for (his)(her)(their) personal wellbeing if the specifics of the vote are released.

¶23 The Commission, however, indicated a willingness to release the "specifics of the vote" within five business days of hiring a new police chief because the Newspaper had made clear its desire to have "this information." In particular, the March 9 e-mail continued:

---

[14] The circuit court record contains an affidavit by Steve Lovejoy, which states that he directed Won to request that the Commission reconsider its March 7 response. However, the contents of this request are not in the circuit court record.

Additionally, as you are aware, there has been a disproportionate focus on race and an inaccurate perception that discrimination has played some role in the decision-making in the police chief selection process. This has been an unfortunate cloud over the selection process and has perceptibly affected such process.

The release of the specifics of the vote at this time will certainly exacerbate these issues. Despite this, you have made clear the import to the [Newspaper] of having this information. Therefore, we will offer a compromise. The specifics of the February 20 vote will be released to you within five business days after a new police chief has been hired by the [Commission].

¶24 On Monday, March 12, 2012, the Newspaper requested that the "information" be released "immediately" because the public should "know how the decision" was made.  Won wrote to Attorney Letteney via e-mail: "We are not interested in a compromise and would like the information immediately.  I can understand [the Commission's] concerns about public perception but we believe it is in the public's interest to know how the decision to reopen the search was made."  The e-mail concluded: "We ask you to reconsider our request and let us know [the Commission's] final response."

¶25  Three days later, on Thursday, March 15, the Newspaper e-mailed to Attorney Letteney a copy of a draft, unfiled, summons and complaint alleging that the Commission violated the public records law.  The Newspaper asked the Commission to stipulate to accept service.  Attorney Letteney informed the Newspaper that the Commission could not accept service and that service should be made on the city clerk.

13

¶26 The next day, Friday, March 16, the Newspaper filed this action in court against the Commission under Wis. Stat. § 19.37(1) of the public records law. The Attorney General or a district attorney did not file an action under the open meetings law.[15]

¶27 On Tuesday, March 20, 2012, the Commission unanimously voted to hire Deputy Chief Howell as Racine's new police chief.

¶28 Two days later, on Thursday, March 22, Attorney Letteney sent an e-mail to the Newspaper that provided, not a record, but the information it had requested. The e-mail stated:

> At the February 20, 2012 meeting of the [Commission], the motion was to <u>reopen the search for a police chief only to the extent to determine whether the other candidates who applied for the Racine Chief of Police position and who met the minimum qualifications, but were not initially asked to interview, were still interested in the position</u>. The import of the discussion leading to the motion was a desire on the part of the Commissioners to compare external candidates to internal candidates, inasmuch as the first interview did not include all members of the [Commission]. Commissioner Van Wanggaard made the motion. It was seconded by Commissioner Marie Black. Commissioners Charles Johnson, Black, and Wanggaard voted in the affirmative. Commissioners Keith Rogers and Melvin Hargrove voted in the negative.

Minutes of the February 20 motion and vote, however, were still not drafted or approved.[16]

---

[15] Before filing an action under the open meetings law, a private citizen must first request a district attorney to file an action on behalf of the State. See Wis. Stat. § 19.97(1), (4). The Newspaper did not follow this procedure.

[16] Because the minutes were not drafted before the March 19, 2012 regular meeting, they were drafted shortly before and approved at the May 22, 2012 regular meeting. See supra note

¶29  The Newspaper did not serve the Commission with this lawsuit until April 11, 2012, which was 20 days after it received the requested information.  The complaint alleged that the Commission "violated the [Public] Records Law and Wis. Stat. § 19.88(2) by denying the Newspaper's request."  Specifically, the complaint alleged that the Commission's stated reasons for denying the Newspaper's request were legally insufficient.  The complaint

> demand[ed] judgment against the defendant under Wis. Stat. § 19.37(1):
>
> A.  Compelling the defendant to provide the Newspaper a copy of the requested record;
>
> B.  Awarding the plaintiffs their reasonable attorneys' fees, actual costs and damages under Wis. Stat. § 19.37(2)[;] and
>
> C.  Awarding such other relief as the Court deems just.

¶30  On May 7, 2012, the Commission filed an answer to the Newspaper's complaint.  In its answer the Commission argued that the mandamus action was "moot" because the Commission "provided the information requested to [the Newspaper] within a reasonable time after the request."  One of the Commission's affirmative defenses was that the mandamus action was "not properly brought under the Wisconsin Public Records Law, because a 'record,' as defined by § 19.32(2), Wis. Stats., containing the information sought has never existed."

---

13.

¶31 At the time that the Commission filed its answer to the Newspaper's complaint, no record was yet in existence. The Commission had not drafted minutes for the February 20 special meeting prior to its regular meeting on March 19 but it had drafted minutes before its next regular meeting on May 22. Specifically, on or about May 21, 2012, Attorney Letteney sent proposed language for February 20 meeting minutes to the police chief's secretary, Dianne Flannery. However, Attorney Letteney did not draft any minutes. Instead, on May 21 Flannery drafted minutes for the February 20 meeting. After Commissioner Rogers approved Flannery's draft minutes, Flannery sent the draft minutes to the five commissioners via e-mail. She did not send the draft minutes to Attorney Letteney. The next day, May 22, the Commission approved the minutes at its regular, bi-monthly meeting.

¶32 On September 13, 2012, the Newspaper filed a motion for summary judgment in the lawsuit. In a brief supporting the motion, the Newspaper clarified that it was seeking disclosure of a record——specifically, meeting minutes. The Newspaper argued that, "[a]lthough the Newspaper does not question the accuracy of the information provided by Mr. Letteney, his e-mail does not satisfy its public records request. . . . The [Commission] has never provided to the Newspaper the minutes of its February 20 meeting." On October 3, 2012, the Commission filed a brief opposing the Newspaper's motion for summary judgment.

16

¶33 On October 25, 2012, the circuit court held a hearing on the Newspaper's motion for summary judgment.  At the hearing, Attorney Letteney, unaware that draft minutes were circulated to the Commission on May 21, stated that he has "never seen minutes for [the February 20, 2012] meeting."  He further stated, "I don't think it's reasonable to anticipate that two days after a meeting a newspaper reporter that understands the process of minutes being taken, minutes being posted, minutes being approved should actually believe that a record actually exists two days after a meeting . . . ."  He concluded that "if the [Newspaper] wins this motion, there is still no record to give them."  The circuit court denied the motion.  The court stated that it was "not satisfied on this record the Court can find that there has been a prima facie case made out that there are documents that exist here."  "There's no fact asserting that minutes——draft minutes were created or that minutes themselves were created, and thus, to grant the motion for summary judgment would yield potentially an order of the Court that would produce nothing and have no meaningful effect."  The court allowed the case to proceed for more discovery.[17]

¶34 On December 3, 2012, Attorney Letteney sent a letter to the circuit court and to the Newspaper's counsel.  The letter reiterated that Attorney Letteney was previously "unaware of the existence of any minutes for [the February 20, 2012] meeting."

---

[17] On January 9, 2013, Commissioner Rogers answered interrogatories submitted by the Newspaper.  He was previously deposed on June 18, 2012.

17

However, he explained that sometime after the October 25 hearing he learned that the police chief's secretary, on May 21, circulated draft minutes for the February 20 meeting to the commissioners. The letter further explained that Attorney Letteney "provided [a] copy of such draft minutes to [the Newspaper's counsel]." The February 20 meeting minutes that were sent to the Newspaper's counsel were almost verbatim with the information that the Commission e-mailed to the Newspaper on March 22.[18] The letter emphasized that "the draft minutes did not exist on February 22, 2012, the date the public records request at issue was made." The letter further emphasized that the approved minutes for the February 20 special meeting had not yet been published on the City of Racine's Web site.[19]

¶35 On March 22, 2013, the Commission filed a motion for summary judgment. Three days later, the Newspaper filed a renewed motion for summary judgment.

¶36 On April 22, 2013, the circuit court held a hearing on those two motions. The circuit court found that no responsive

---

[18] The minutes read:

Reopening the Police Chief recruitment to the extent of those applicants who were qualified, but not previously granted interviews, approved on a motion by Commissioner Wanggaard and seconded by Commissioner Black. Motion carried three to two, with Commissioners Johnson, Wanggaard, and Black voting in the affirmative, and Commissioners Hargrove and Rogers voting in the negative.

[19] The circuit court record does not indicate when the February 20 minutes were published on the city's Web site.

record existed at the time of the Newspaper's request. In particular, it found that "it's not disputed I guess that at the time the demand was made there wasn't any written recording to be supplied to the City [sic] pursuant to their request." Further, "the minutes of February 20th . . . were never approved until the Commission's May 22nd meeting . . . ."

¶37 The circuit court also found that "it's clear the City hadn't or didn't know exactly what had happened at the [February 20, 2012] meeting with respect to minutes . . . ." The court found that:

> [I]n this case I think the issue on the part of the [Newspaper] is created by the lack of knowledge on the part of the governmental entity to know exactly what was happening in a committee that was meeting to discuss the hiring of a chief of police and the way it did or did not keep its records, and that's why this case in its instance had to lead to a process to discover whether there was a record that existed or not. It wasn't known . . . .

¶38 At the end of the hearing, the circuit court denied the Newspaper's motion for summary judgment, granted the Commission's motion for summary judgment, and dismissed the action.[20] After an in-depth discussion of State ex rel. Zinngrabe v. School District of Sevastopol, 146 Wis. 2d 629, 431 N.W.2d 734 (Ct. App. 1988), the circuit court stated that Zinngrabe "is controlling and on point here." The circuit court concluded, based on Zinngrabe, that it was "not satisfied that the pleadings which were couched in terms of [public] records

---

[20] On May 2, 2013, the circuit court entered a written order to that effect.

law allow us to reach the issue about . . . the open meetings law."

¶39  On May 28, 2014, the court of appeals reversed the circuit court's order and "remand[ed] solely for a determination of whether the Newspaper is entitled to attorney fees and costs."  Journal Times v. City of Racine Bd. of Police & Fire Comm'rs, 2014 WI App 67, ¶2, 354 Wis. 2d 591, 849 N.W.2d 888. The court of appeals held that, although "the Newspaper's record request became moot when the Commission provided the information," the action should not be dismissed because "[t]he Newspaper still has a viable claim for attorney fees and costs if the litigation 'was a cause, not the cause' of the Commission's March 22 release."  Id., ¶11 (citation omitted). The court of appeals held "that the Commission is estopped from arguing that a record of the vote did not exist."[21]  Id., ¶12.

¶40  On June 17, 2014, the Newspaper filed a motion for reconsideration, asserting that it was entitled to reasonable attorney fees, damages, and other actual costs as a matter of law because it "prevailed" "in substantial part" in the mandamus action.  On June 20, 2014, the court of appeals denied the motion for reconsideration.

---

[21] In its response brief, the Newspaper states that it "agrees with the [Commission] that the court of appeals should not have applied equitable estoppel here."  The Newspaper argues that we should rely on Newspapers, Inc. v. Breier, 89 Wis. 2d 417, 279 N.W.2d 179 (1979), instead of equitable estoppel, to bar the Commission from raising its defense that no record existed.  Thus, we do not address equitable estoppel.

¶41  On July 21, 2014, the Commission filed a petition for review.  On August 20, 2014, the Newspaper filed a cross-petition for review.  On November 14, 2014, we granted the petition and cross-petition for review.

## II. STANDARD OF REVIEW

¶42  "Interpretation of our own case law presents a question of law that we review de novo." State v. Walker, 2008 WI 34, ¶13, 308 Wis. 2d 666, 747 N.W.2d 673 (citation omitted). "We independently review whether the circuit court correctly granted summary judgment" to the Commission. Stoker v. Milwaukee Cnty., 2014 WI 130, ¶16, 359 Wis. 2d 347, 857 N.W.2d 102 (citation omitted). "Summary judgment 'shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Wis. Stat. § 802.08(2)). "'Statutory interpretation and application present questions of law that we review de novo while benefiting from the analyses of the court of appeals and circuit court.'" 118th St. Kenosha, LLC v. DOT, 2014 WI 125, ¶19, 359 Wis. 2d 30, 856 N.W.2d 486 (quoting 260 N. 12th St., LLC v. DOT, 2011 WI 103, ¶39, 338 Wis. 2d 34, 808 N.W.2d 372).

¶43  "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681

N.W.2d 110 (quoted source and citations omitted).   "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning."   Id. (citations omitted).

### III. ANALYSIS

¶44  At the outset, we recognize that the Newspaper's action was brought under the public records law rather than the open meetings law.   Thus, we do not determine whether the Commission's practices comport with the open meetings law.   In our analysis we focus on whether the Newspaper prevailed in this action in substantial part, entitling it to reasonable attorney fees, damages, and other actual costs under Wis. Stat. § 19.37(2)(a) of the public records law.   In doing so, we first discuss general principles concerning public access to governmental records.   Second, we outline the parties' arguments.   Third, we analyze whether the Commission is barred from raising its affirmative defense that no responsive record existed at the time of the Newspaper's requests.   Fourth, we review the Newspaper's requests and the Commission's responses. Finally, we evaluate precedent to determine whether the Commission exercised reasonable diligence in responding to the requests.   Ultimately, we conclude that the Newspaper's requested relief is supported neither by the facts of this case nor by legal precedent.

### A. Public Access

¶45 The public records law and open meetings law are fundamental concepts in our state's history of transparent government. See State ex rel. Auchinleck v. Town of LaGrange, 200 Wis. 2d 585, 597, 547 N.W.2d 587 (1996); Schill v. Wisconsin Rapids Sch. Dist., 2010 WI 86, ¶¶1-3, 327 Wis. 2d 572, 786 N.W.2d 177. These laws were enacted to promote public access to actions of governmental bodies. See Watton v. Hegerty, 2008 WI 74, ¶¶9-10, 311 Wis. 2d 52, 751 N.W.2d 369. Wisconsin's public records law states that "it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them." Wis. Stat. § 19.31. "[T]he clearly stated, general presumption of our law is that all public records shall be open to the public." Linzmeyer v. Forcey, 2002 WI 84, ¶15, 254 Wis. 2d 306, 646 N.W.2d 811 (citation omitted). "This presumption reflects the basic principle that the people must be informed about the workings of their government and that openness in government is essential to maintain the strength of our democratic society." Id. (citation omitted). Similarly, Wisconsin's open meetings law states that "it is declared to be the policy of this state that the public is entitled to the fullest and most complete information regarding the affairs of government as is compatible with the conduct of governmental business." Wis. Stat. § 19.81(1).

¶46 Despite their similar purposes, the public records law and open meetings law have differences and are not without

23

limits.     The   legislature   enacted   different   avenues   of enforcement for these two laws.  The public records law's plain language allows an individual to initiate a lawsuit to enforce a records request but the statute does not similarly authorize an individual to initiate a lawsuit to enforce the open meetings law.  Specifically, the public records law provides that, "[i]f an authority withholds a record or a part of a record or delays granting access to a record or part of a record after a written request for disclosure is made," "[t]he requester may bring an action for mandamus asking a court to order release of the record."  Wis. Stat. § 19.37(1)(a).

¶47 By contrast, the open meetings law "shall be enforced in the name and on behalf of the state by the attorney general or, upon the verified complaint of any person, by the district attorney of any county wherein a violation may occur."  Wis. Stat. § 19.97(1).   "If the district attorney refuses or otherwise fails to commence an action to enforce this subchapter within 20 days after receiving a verified complaint, the person making such complaint may bring an action under subs. (1) to (3) on his or her relation in the name, and on behalf, of the state."  Wis. Stat. § 19.97(4).

¶48 The open meetings and public records laws become somewhat intertwined in this case because the Newspaper argues, in part, that the public records law was violated because the Commission violated the open meetings law.  The Newspaper argues that "Wis. Stat. § 19.88(3) [of the open meetings law] required the [Commission] to record and disclose the information the

Newspaper requested." Section 19.88(3) states that "[t]he motions and roll call votes of each meeting of a governmental body shall be recorded, preserved and open to public inspection to the extent prescribed in subch. II of ch. 19." Wis. Stat. § 19.88(3). Subchapter II includes the public records law. The Newspaper urges this court to "hold that the legislature intended the duties imposed by § 19.88(3) to be enforced under the [Public] Records Law."

¶49 The Commission, relying on Zinngrabe, 146 Wis. 2d 629, argues that we cannot consider whether it complied with the open meetings law, because this lawsuit was filed under the public records law. Further, the Commission argues that it did not violate the open meetings law. It argues that it was not required under Wis. Stat. § 19.88(3) of the open meetings law to create a record of the commissioners' individual votes at the February 20, 2012 special meeting. The Commission reasons that § 19.88(3) requires "roll call votes" to be recorded, but the Commission used voice votes, not roll call votes, at the February 20 special meeting. The Commission also argues that it was not required under § 19.88(3) to record the motion at that meeting. Even if § 19.88(3) required the Commission to record the motion and individual commissioners' votes at the February 20 special meeting, the Commission argues, "this [statute] does not obligate a public body to 'immediately' make a record of any such motions or votes."

¶50 We turn to Zinngrabe. Donald Zinngrabe filed a public records request with the Sevastopol School District seeking to

25

inspect minutes from several school board closed meetings. Zinngrabe, 146 Wis. 2d at 630-31. After being told that the requested records did not exist, he filed a mandamus action, seeking "a writ of mandamus, punitive damages, and other costs under the [public] records law . . . ." Id. at 630. He argued that he could seek relief under the public records law for the school board's failure to maintain records of its closed meetings as allegedly required by Wis. Stat. §§ 120.11(1) and 120.17(3) (1985-86). Id. at 634. The court of appeals rejected that argument, explaining that:

> Zinngrabe essentially argues that the board is attempting to defeat the provisions of the [public] records law by not keeping records that it is directed by statute to maintain. Zinngrabe's claim for relief, however, assumes that the board's alleged failure to keep minutes can be attacked under the [public] records law. We disagree with this premise and, accordingly, need not address the issue of whether and to what extent minutes must be maintained by the school board clerk.

Id. at 634-35.

¶51 Consistent with Zinngrabe, the Newspaper cannot seek relief under the public records law for the Commission's alleged violation of the open meetings law. It is undisputed that the Newspaper filed this action under the public records law and did not follow the procedures to pursue an action under the open meetings law. Thus, we do not address whether an open meetings law violation occurred. In this public records law mandamus action, the Newspaper cannot recover reasonable attorney fees, damages, and other actual costs under Wis. Stat. § 19.37(2) for

26

an alleged violation of the open meetings law. See id. at 634-35; 118th St. Kenosha, LLC, 359 Wis. 2d 30, ¶33 (Even if "damages . . . are compensable under a particular statute, those damages cannot be recovered in a claim brought under the wrong statute.").

¶52 The Newspaper's contrary arguments do not persuade us to hold otherwise. The Newspaper contends that the open meetings law's "enforcement provisions are ill-suited to serve the legislature's declared purpose to ensure timely public access to government affairs." However, the legislature mandated significant differences between the two laws' enforcement provisions. See Auchinleck, 200 Wis. 2d at 592-93. If the Newspaper seeks change in the statutory provisions, it must direct those concerns to the legislature. "[A]ddressing those concerns is a legislative function, not a function properly undertaken by the courts." Milwaukee Journal Sentinel v. City of Milwaukee, 2012 WI 65, ¶83, 341 Wis. 2d 607, 815 N.W.2d 367 (Roggensack, J., concurring for a majority of the court). We also disagree with the Newspaper's argument that "Wis. Stat. § 19.88(3) . . . implicitly incorporates [the public records law's] enforcement measures." Were we to hold otherwise, we would effectively nullify the enforcement provisions that the legislature included in the open meetings law. See Wis. Stat. § 19.97; Auchinleck, 200 Wis. 2d at 592-93.

B. Did the Newspaper Prevail in Substantial Part?

¶53 The crux of the issue before the court is whether the Newspaper prevailed in substantial part in this action so to

27

entitle it to reasonable attorney fees, damages, and other actual costs under Wis. Stat. § 19.37(2)(a).

¶54 We conclude that under the facts of this case, the Newspaper did not prevail in substantial part in this action and is therefore not entitled to reasonable attorney fees, damages, and other actual costs under Wis. Stat. § 19.37(2), because the Commission did not unlawfully deny or delay release of the subject record. In other words, the Newspaper is not entitled to its requested relief because its request is not supported by the facts of this case or the law. Both parties contributed to the misunderstanding, if there was any, of what was being requested and the sufficiency of the responses. In any event, no responsive record existed at the time of the request and no record was produced because of the lawsuit. While a records request need not be made with exacting precision to be deemed a valid public records request,[22] the Newspaper is a requester and wordsmith with experience and sophistication. Here, the requests could reasonably be perceived as seeking information, rather than a record. Moreover, the request cites the open meetings law. The Commission initially denied the requests but later agreed to provide, and did provide, responsive information. At the time of the request and at the time that the information was provided, no record existed that could have been responsive to the request. The Commission was not required to provide information in response to a records request. The

---

[22] See ECO, Inc., 259 Wis. 2d 276, ¶¶23, 26.

Newspaper no longer seeks production of a record; it seeks only reasonable attorney fees, damages, and other actual costs under § 19.37(2)(a). Whether a record should have been in existence at the time of the request is a matter of the open meetings law, not public records law. Certainly the Commission cannot avoid a public records request by failing to timely create a record. In this case, however, the Commission responded to the Newspaper with reasonable diligence and released the requested information while maintaining that it was not legally required to do so and at a time when no record existed. As will be discussed, neither the facts nor the law support the conclusion that the Newspaper prevailed in "substantial part."[23]

### 1. Public Records Law

¶55 The public records law "is designed to make _existing_ _records_ available to the public unless withholding such documents is specifically authorized by law." State ex rel. Gehl v. Connors, 2007 WI App 238, ¶13, 306 Wis. 2d 247, 742 N.W.2d 530 (emphasis added) (citing Zinngrabe, 146 Wis. 2d at 633). However, "the public records law does not require an

---

[23] The Newspaper cross-petitioned this court for review, seeking to have us create a new test for recovery of reasonable attorney fees, damages, and other actual costs under Wis. Stat. § 19.37(2). It argues that "[t]his Court should hold that when a custodian abandons its stated reasons for denial, it has no defense at all and the requester necessarily has prevailed 'in substantial part' under Wis. Stat. § 19.37(2)." We decline to adopt this proposed test in the present case. As we will explain, the Commission has a valid defense for denying the Newspaper's request: no record containing the requested information existed.

authority to provide requested information if no record exists, or to simply answer questions about a topic of interest to the requester."  Wis. Dep't of Justice, Wisconsin Public Records Law, Compliance Outline, at 18 (Sept. 2012), available at http://www.doj.state.wi.us/sites/default/files/dls/public-records-compliance-outline-2012.pdf.[24]  See also Zinngrabe, 146 Wis. 2d at 635; George v. Record Custodian, 169 Wis. 2d 573, 579, 485 N.W.2d 460 (Ct. App. 1992) ("The [public] records law does not require the custodian to . . . create a record for the benefit of a requester.").  While a record will always contain information, information may not always be in the form of a record.

¶56  "Each authority, upon request for any record, shall, as soon as practicable and without delay, either fill the request or notify the requester of the authority's determination to deny the request in whole or in part and the reasons therefor."  Wis. Stat. § 19.35(4)(a).  "For purposes of the production of public records under Wis. Stat. § 19.35(4)(a), the statutory language 'as soon as practicable' implies a reasonable time for response . . . ."  Watton v. Hegerty, 2007 WI App 267, ¶36, 306 Wis. 2d 542, 744 N.W.2d 619, rev'd on other grounds, 2008 WI 74, 311 Wis. 2d 52, 751 N.W.2d 369.  See also Milwaukee Journal Sentinel, 341 Wis. 2d 607, ¶56 & n.31 (explaining that

---

[24] See also Wis. Stat. § 19.39 ("Any person may request advice from the attorney general as to the applicability of this subchapter under any circumstances.  The attorney general may respond to such a request.").

§ 19.35(4)(a) allows a reasonable time for a response). "[W]hat constitutes a reasonable time for a response by an authority depends on the nature of the request, the staff and other resources available to the authority to process the request, the extent of the request, and other related considerations." WIREdata, Inc. v. Vill. of Sussex, 2008 WI 69, ¶56, 310 Wis. 2d 397, 751 N.W.2d 736 (internal quotation marks omitted). "Accordingly, whether an authority is acting with reasonable diligence in a particular case will depend upon the totality of the circumstances surrounding the particular request." Id.

¶57 The public records law provides a requester with the ability to enforce a public records request in a mandamus action. Wis. Stat. § 19.37(1). A requester who prevails "in substantial part" in such an action is entitled to "reasonable attorney fees, damages of not less than $100, and other actual costs . . . ." Wis. Stat. § 19.37(2)(a). However, "[i]f the failure to timely respond to a request was caused by an unavoidable delay accompanied by due diligence in the administrative processes, . . . the plaintiff has not substantially prevailed." Racine Educ. Ass'n v. Bd. of Educ. for Racine Unified Sch. Dist., 145 Wis. 2d 518, 524, 427 N.W.2d 414 (Ct. App. 1988) ("Racine Educ. Ass'n II") (citing Racine Educ. Ass'n v. Bd. of Educ. for Racine Unified Sch. Dist., 129 Wis. 2d 319, 327, 385 N.W.2d 510 (Ct. App. 1986) ("Racine Educ. Ass'n I")). Stated differently, if a custodian acts with reasonable diligence, a requester is not entitled to

31

reasonable attorney fees, damages, and other actual costs under § 19.37(2) on grounds of unlawful delay.  See id. at 524-25.

### 2. The Parties' Arguments

¶58 The Newspaper argues that it filed this lawsuit to obtain a record that it was led to believe existed, but to which access was being denied.  The Newspaper asserts that under Breier, 89 Wis. 2d 417, the Commission is limited to defending on the reasons it gave for denying access and is precluded from explaining that no record existed.  The Newspaper argues that because the Commission no longer relies on the reasons that it originally provided for denying the Newspaper's request, reasonable attorney fees, damages, and other actual costs must be awarded as a matter of law.

¶59 The Newspaper further argues that it prevailed in substantial part because the Commission did not respond and provide the requested information "as soon as practicable and without delay," as required by Wis. Stat. § 19.35(4)(a).[25]  The Newspaper is not still seeking a record.  Instead, the Newspaper's argument focuses on the timing of the response, contending that "[t]he [Commission's] initial response, coming nearly two weeks after the request, was hardly 'as soon as practicable and without delay.'"  Similarly, the Newspaper contends that it "was entitled to the information when the

---

[25] Relying on an attorney general opinion, the Newspaper argues that a "24-hour delay" is illegal under the public records law.  See 67 Wis. Op. Att'y Gen. 117, 119-20 (1978) (OAG 24-78) ("I am not aware of any sufficient reason to justify a 24-hour delay.").

Newspaper first requested its production, not a month later when the [Commission] actually disclosed it." The Newspaper accuses the Commission of "deliberate failure to create the record" and "strategically delaying disclosure" "for an illicit purpose, . . . to shield public officials from public accountability for their official actions." The Newspaper urges this court to "hold it is entitled to recover damages for that delay, along with reasonable attorney fees and costs, under Wis. Stat. § 19.37(2)."

¶60 On the other hand, the Commission argues that the Newspaper did not prevail in substantial part because the Commission acted reasonably. Foremost, the Commission argues that it could not be required to produce a record that did not exist at the time of the request. No record existed until the end of May 2012. The lawsuit was filed about two months earlier, in March 2012. The Commission argues that we may consider its affirmative defense——that no record responsive to the Newspaper's request existed at the time of the request—— because this defense is based on a statutory exception to the public records law. According to the Commission, the court of appeals in Blum, 209 Wis. 2d 377, clarified that Breier does not prevent a court from considering whether a requested record is statutorily exempt from disclosure under the public records law, even if the statutory exemption was not mentioned in a custodian's response to a public records request.

¶61 The Commission further argues that even though no record existed and it was not required to provide information,

33

it acted reasonably and provided the information requested by the Newspaper. The Commission argues that it reasonably believed that the Newspaper was requesting information, not a record, and that it did not actively mislead the Newspaper into believing that a record existed. The Commission emphasizes that the Newspaper's requests were ambiguous and that the Newspaper could not reasonably have thought that meeting minutes existed only two days after the meeting at issue. The Commission also argues that it responded to the requests for information in a timely manner. It argues that "[n]either the Public Records Law nor the Open Meetings Law requires it to create a record earlier than it would in the regular course of its business for the purpose of responding to a [public] records request." The Commission argues that "there is no requirement in the law that the [Commission] create the record immediately." According to the Commission, the Newspaper's accusation that the Commission deliberately failed to create a record "to shield [its members] from accountability for their official actions" is "preposterous." The Commission argues that it created and approved the meeting minutes at issue according to its regular course of business and that a "clerical error" slightly delayed their creation. The Commission argues that "[t]hese facts do not support a conclusion that the [Commission] was covering up its 'failure' to create these minutes earlier."

### 3. Breier and Blum

¶62 The Newspaper argues that Breier bars the Commission from raising a defense that no responsive record existed at the

34

time of the Newspaper's request. The Commission argues that, under Blum, it may assert that defense although it did not raise that defense before the Newspaper filed the mandamus action.

¶63 In Breier The Milwaukee Journal requested that the Milwaukee Police Department disclose daily arrest records, including the charges upon which persons were arrested. Breier, 89 Wis. 2d at 420-21. The police department refused to disclose records of the charges, so The Milwaukee Journal brought a mandamus action seeking an order compelling disclosure of those records. Id. at 421-22. The Breier court stated:

> The duty of the custodian is to specify reasons for nondisclosure and the court's role is to decide whether the reasons asserted are sufficient. It is not the trial court's or this court's role to hypothesize reasons or to consider reasons for not allowing inspection which were not asserted by the custodian.

Id.

¶64 Unlike the case at issue, in Breier the requested records existed at the time of the request. The police department denied the public records request for public policy reasons in order to protect the arrested individuals from "possible personal and economic harm." Id. at 421. This court held "as a matter of law that the harm to the public interest in the form of possible damage to arrested persons' reputations does not outweigh the public interest in allowing inspection of the police records which show the charges upon which arrests were made." Id. at 440. Accordingly, this court remanded for the circuit court to issue a writ of mandamus compelling

disclosure of the requested records. Id. In the present case, the circuit court could not have ordered that relief at the time the lawsuit was commenced because no record existed then, and in the Commission's ordinary course of business a record would not have existed until the next regular meeting in late March.

¶65 Thus, Breier will sometimes prohibit a court from considering reasons for denying a public records request that were not asserted by a custodian prior to the commencement of a mandamus action. See Oshkosh Nw. Co. v. Oshkosh Library Bd., 125 Wis. 2d 480, 484, 373 N.W.2d 459 (Ct. App. 1985) ("Where inspection is denied, it is the custodian, not the attorney representing the governmental body after a mandamus action is commenced, who must give specific and sufficient reasons for denying inspection."). But Breier does not always require that prohibition, especially if no record exists.

¶66 In Blum a student, Elizabeth Blum, filed a public records request with the Johnson Creek Board of Education. Blum, 209 Wis. 2d at 379. The request sought records indicating the interim grades of a student who received a scholarship over Blum. Id. The board denied the request, stating that calculating interim grades would be burdensome and that interim grades were immaterial for determining the recipient of the scholarship. Id. at 380. Blum then filed a mandamus action to compel the board to disclose the requested records. Id.

¶67 The court of appeals affirmed the circuit court's order denying Blum's mandamus petition. Id. at 380, 391-92. The court of appeals held that Wis. Stat. § 118.125, which

36

states that pupil records maintained by a public school are confidential, exempted the requested records from disclosure under the public records law. Id. at 385. "[U]nless there exists: (1) a 'clear statutory exception'; (2) a common law limitation; or (3) an overriding public interest in keeping the record confidential, the information sought must be disclosed." Id. at 383 (quoting Hathaway v. Joint Sch. Dist. No. 1, City of Green Bay, 116 Wis. 2d 388, 397, 342 N.W.2d 682 (1984)). The court of appeals concluded that § 118.125 was a clear statutory exception to disclosure. Id. at 385.

¶68 The court of appeals rejected Blum's argument that, because the board did not rely on Wis. Stat. § 118.125 in its response to her public records request, Breier forbade the court from considering whether that statute exempted the requested records from disclosure. Id. at 391-92. Because the board relied on § 118.125 in its response to the mandamus petition, "[t]he trial court thus was not required to 'hypothesize' the applicable statutory exception," which would have been prohibited under Breier. See id. at 388 n.6. The court of appeals concluded, "the Board's insufficient denial letter to Blum does not prevent a court from determining whether a 'clear statutory exception' applies to the requested interim grades." Id. at 388.

¶69 Thus, under Blum, Breier does not prohibit a court from considering whether a requested record is statutorily exempt from disclosure under the public records law, even if a

37

custodian did not assert the statutory exemption prior to the commencement of a mandamus action.

¶70 The Newspaper urges this court to rely on Breier and conclude that it has prevailed in substantial part. The Newspaper argues that Breier requires a custodian to be specific in its response to a public records request so that a requester can challenge the response and so a court can review the sufficiency of the response. The Newspaper contends that the Commission "actively misled the newspaper into believing that it had created a record of the motion at issue," only to assert that no record existed after the mandamus action was filed. The Newspaper argues that, had it known that no record existed, it would have filed suit under the open meetings law instead of the public records law.

¶71 The Commission urges us to rely on Blum and thus allow it to raise its affirmative defense that no responsive record existed at the time of the Newspaper's request. It argues that a record's non-existence provides a clear statutory exception to disclosure under the public records law. The Commission reasons that the public records law does not require the creation of a record or the release of a record that does not exist. The Commission further argues that "there is no evidence . . . that the [Commission] purposefully or maliciously misled the Newspaper" into believing that a record existed. Rather, the Commission argues that it mistakenly believed that the Newspaper was requesting information, not records, and that the "lack of clarity" of the Newspaper's requests "resulted in confusion."

38

¶72 To determine whether the Commission may assert its affirmative defense that no responsive record existed at the time of the Newspaper's request, we will determine whether a requested record's non-existence provides a "clear statutory exception" to disclosure under the public records law. See Blum, 209 Wis. 2d at 388. "The [public] records law affords the right to inspect and make or receive a copy of a 'record.'" George, 169 Wis. 2d at 579 (quoting Wis. Stat. § 19.35(1)(b)). Wisconsin Stat. § 19.35(1)(a) states that, "[e]xcept as otherwise provided by law, any requester has a right to inspect any record." Wis. Stat. § 19.35(1)(a) (emphasis added). Similarly, § 19.35(1)(b) states that, "[e]xcept as otherwise provided by law, any requester has a right to inspect a record and to make or receive a copy of a record." Wis. Stat. § 19.35(1)(b) (emphases added).

¶73 Accordingly, the public records law provides neither a right to inspect nor a duty to disclose a non-existent record. See George, 169 Wis. 2d at 579 (holding that "[a] non-existent record cannot be inspected or copied" and "[t]he [public] records law does not require the custodian to . . . create a record for the benefit of a requester."). A governmental entity may not circumvent disclosure of a record by failing to create a record that it is legally required to create. However, the public records law does not require the government to create a record or release a non-existent record. The public records law "is designed to make existing records available to the public unless withholding such documents is specifically authorized by

39

law." Gehl, 306 Wis. 2d 247, ¶13 (emphasis added) (citing Zinngrabe, 146 Wis. 2d at 633). See also Compliance Outline, supra, at 18 ("The public records law provides access to existing records maintained by authorities."). Thus, "[t]he public records law does not require an authority to provide requested information if no record exists . . . ." Compliance Outline, supra, at 18. In short, a record's non-existence provides a clear statutory exception to disclosure under the public records law.

¶74 We are not persuaded by the Newspaper's argument that Blum applies only to a confidentiality-based clear statutory exception to disclosure. The court of appeals in Blum held that it may consider a "clear statutory exception" to disclosure, although the custodian did not rely on the exception in its response to a public records request. Blum, 209 Wis. 2d at 387-88. Although the court discussed a confidentiality statute, it did so because that kind of statute was at issue in that case. The court did not suggest that its holding was limited to confidentiality-based statutory exceptions. Further, in Breier, the court did not address the issue of whether a custodian could assert a statutory exception, such as a record's non-existence, for the first time after a mandamus action has been filed.

¶75 We are also not persuaded by the Newspaper's argument that the Commission's affirmative defense is barred because the Commission, by failing to disclose that no record existed, hindered both the Newspaper's ability to prepare a challenge and a court's ability to review the sufficiency of the Commission's

denial. Accepting this argument would require us to overturn Blum, which we are unwilling to do. In fact, the court of appeals in Blum rejected the same argument. See id. at 386-88. The court of appeals in Blum explained that Breier requires custodians to be specific in their responses to public records requests so that courts can review the sufficiency of the responses. Id. at 386-87. However, if "the information requested is specifically exempted by statute from disclosure," the legislature has already determined that the information need not be disclosed. Id. at 387. "[A] reviewing court's de novo determination whether certain information is statutorily exempted from disclosure is not aided by anything a custodian might say in a denial letter, nor is it deterred by the custodian's silence." Id. at 387-88. In the present case, although the Commission's responses did not state that no record existed, that omission does not impair our ability to determine whether a statutory exemption to disclosure applies.[26]

¶76 We conclude that under the circumstances presented, this court may consider whether a record existed when the public records request was made, even though the custodian's response

---

[26] We also disagree with the Newspaper's argument that we should ignore the Commission's affirmative defense because the Commission actively misled the Newspaper into believing that a record existed. There is no evidence that the Commission actively misled the Newspaper. The Commission did not know whether a responsive record existed when it responded to the requests. In addition to the fact that no record existed that could be produced, the Commission acted reasonably in responding to what it deemed to be a request for information.

41

to the request did not specifically state that the record did not exist.  See id. at 388 (holding that a court may consider a clear statutory exception to disclosure even if a custodian did not rely on that exception in its response to a public records request).  Based on the foregoing discussion, the Commission lawfully denied the Newspaper's request because no responsive record existed at the time of the request.

### 4. The Requests and Responses

¶77  What complicates and also clarifies this case is that each party may have made mistakes that exacerbated confusion regarding what was being requested and the fact that no responsive record existed.  However, those misunderstandings do not equate to a public records law violation such that the Newspaper prevailed "in substantial part."  It is in part because the Commission acted with reasonable diligence and provided more information than the public records law required and no record existed to produce, that the Newspaper has not prevailed in substantial part such that it is entitled to recover reasonable attorney fees, damages, and other actual costs under Wis. Stat. § 19.37(2).  A review of the facts highlights the reasonable confusion.

¶78  The Commission held a special meeting in closed session on February 20, 2012.  Two days later, Christine Won, a reporter for the Newspaper, e-mailed two commissioners and Racine Deputy City Attorney Scott Letteney.  Won's e-mail asked for information, not a record.  Her e-mail stated, "I am officially asking on the record to know the vote of each

42

commissioner from the closed [Commission] meeting Monday [February 20, 2012,] in which they decided to reopen the police chief search." (Emphasis added.)

¶79 Won sent a clarification e-mail hours later, which stated: "Under statute 19.88(3) —— I am asking for the recorded motions and votes of each [] Commissioner at the closed meeting . . . ." Although this time Won asked for "recorded motions and votes," her request was based on Wis. Stat. § 19.88(3), which is part of the open meetings law, not the public records law. Section 19.88(3) requires governmental bodies to record their "motions and roll call votes." Wis. Stat. § 19.88(3). That statute does not expressly state when a record must be created.[27] In the same e-mail, Won again asked for information, stating, "I would appreciate this information as soon as practicable and without delay." (Emphasis added.)

¶80 The Commission's March 7 response stated that "[y]our request for the specific vote of the [Commission] . . . is denied." (Emphasis added.) Similarly, in its March 9 e-mail, the Commission stated that it had a lawful basis "for denying the release of the vote of the [Commission] from its February 20, 2012 meeting." (Emphasis added.) Although that e-

---

[27] The Newspaper argues that Wis. Stat. § 19.88(3) implicitly requires a record to be created "as soon as practicable and without delay." See Wis. Stat. § 19.35(4)(a). We express no opinion on this argument. However, we note that the "as soon as practicable and without delay" language of § 19.35(4)(a) allows a reasonable amount of time to respond to a public records request.

mail stated that the Commission was "performing the required balancing test for the release of records," it seemingly meant that it was applying this balancing test to determine whether it should release the requested information immediately. Specifically, the Commission stated that it understood "the import to the [Newspaper] of having this information" and, therefore, offered to release "the specifics of the February 20 vote" within five business days of hiring a new police chief. (Emphasis added.)

¶81  On March 12 the Newspaper's final request again asked for information, not a record.  The Newspaper stated that it "would like the information immediately."

¶82  On March 22, two days after hiring a new police chief, the Commission e-mailed the requested information to the Newspaper.  The Commission did not release a record at that time because no record containing the requested information existed before May 21.  The Newspaper argues, in part, that waiting this long for the information is waiting too long.  The Commission is under no obligation to provide information in response to a records request.

¶83  The Commission reasonably interpreted the Newspaper's e-mails as requests for information, not minutes.  Indeed, it is difficult to imagine that a local reporter, sophisticated requester and wordsmith, who displayed familiarity with the Commission, would have thought that meeting minutes were available a mere two days after a special meeting was held and before they would have been completed in the Commission's

44

ordinary course of business. Perhaps that is why the requests and responses are framed in terms of access to information. In fact, the Newspaper did not clarify until September 2012, when it moved for summary judgment, that it was actually seeking meeting minutes and that the information it received in March 2012 was unsatisfactory. Could both sides have done better? Yes. Although not required, the Newspaper could have specified that it wanted only an actual record or, more specifically, minutes. The Commission could have clearly replied that no record existed. However, the Newspaper's requests and the Commission's responses demonstrate a dialogue between the parties wherein information was provided in response to a request for information at a time when no record existed. Notably, the Newspaper does not complain that it failed to receive the record.

¶84 Nonetheless, the circumstances presented in this case demonstrate that the Commission provided, rather than hid, information pertinent to the request. The Newspaper filed this action before the record was created and after it knew that it would receive the information. The creation of the record, rather than the lawsuit, caused the record's production. The Newspaper's argument rests upon the timing of the record's creation under the open meetings law. Again, this is not an open meetings law case.

¶85 We note that the Commission was not required to respond by a specific date and time. The Commission could have answered in a number of ways. It was not necessarily required

45

to notify the Newspaper that it would provide the information after it decided to do so. "[U]nder [Wis. Stat.] § 19.35(4)(a), receipt of [a public] records request triggers either a duty to respond to the request or a duty to produce the requested records." ECO, Inc. v. City of Elkhorn, 2002 WI App 302, ¶24, 259 Wis. 2d 276, 655 N.W.2d 510. "Wisconsin's Public Records Law does not explicitly require [a custodian] to notify . . . the requester, as long as the [custodian] 'fill[s] the request' and does so 'as soon as practicable and without delay.'" Racine Educ. Ass'n II, 145 Wis. 2d at 523 (quoting Wis. Stat. § 19.35(4)(a)). Nevertheless, the Commission did both. It notified the Newspaper on March 9 that it would release the requested information soon. The Newspaper responded—by filing a lawsuit. On March 22 the Commission followed through and provided the Newspaper with the requested information, albeit not in record form. The Newspaper responded by serving the lawsuit on the Commission. Moreover, even before the Newspaper made its public records request, the Commission had already issued a press release.

¶86 While the public records law does not impose a specific timing requirement instructing when to file a mandamus action, when a mandamus action is filed may significantly influence whether the requester has "prevailed" in "substantial part" so to be awarded reasonable attorney fees, damages, and other actual costs. Here, the timing and language of the requests and responses, the timing of the filing and service of the lawsuit, the voluntary provision of information, and the

fact that no responsive record existed, all play a role in our analysis that the Newspaper has not prevailed in substantial part so to receive the award that it seeks.[28]  The lawsuit was not causally related to the release of the record——the record was not in existence when the lawsuit was commenced or even served.  Here, the Commission's conduct was reasonable under the circumstances.

¶87  As a practical matter, in many smaller jurisdictions, a local governmental body can be swamped with public records requests and may need a substantial period of time to respond to any given request.  See Racine Educ. Ass'n II, 145 Wis. 2d at 523-24 (holding that a custodian timely released a record 35 days after it was requested).  Many jurisdictions, like the one in the case at issue, function with the help of part-time, volunteer citizens.  Governmental meetings may occur fairly infrequently.  Even in a larger jurisdiction, a significant period of time may be needed to respond to a public records request.  For example, the court of appeals has held that the passage of 41 days between a request and the City of Milwaukee Police Department's release of the requested record was reasonable.  Watton, 306 Wis. 2d 542, ¶36, rev'd on other grounds, 311 Wis. 2d 52.  The Newspaper is incorrect in arguing that Wis. Stat. § 19.35(4)(a) requires immediate disclosure.

---

[28] Even if the Newspaper would have known that no record existed and pursued an action under the open meetings law, it would have been required to file a complaint with a district attorney and then wait 20 days for a response from the district attorney before filing suit.  See Wis. Stat. § 19.97(1), (4).

47

See <u>id.</u> The public records law is less exact than the Newspaper wishes.

¶88 We conclude that although the requests and the responses are less than precise, the Newspaper has not prevailed in substantial part so to entitle it to reasonable attorney fees, damages, and other actual costs under Wis. Stat. § 19.37(2). No record existed. Although not required, the timing of the Commission's voluntary release of the requested information further demonstrates that the Newspaper's requested relief is not justified. The Newspaper argues that it "was entitled to the information when the Newspaper first requested its production, not a month later when the [Commission] actually disclosed it." We note that what the Newspaper received a month later was, in fact, information, not a record. The Newspaper's argument about the timing of the release is curious given that it seems to argue that the information, not a record, should have been released earlier. In fact, the Newspaper had the information that it requested, just not in record form, before it served this lawsuit on the Commission. Therefore, contrary to the Newspaper's assertion, the public records law does not declare that the Newspaper prevailed in substantial part when it made the request and filed and served the lawsuit before any record existed, and when the Newspaper's request was for information, which was provided, even though the Commission was not required to provide information in response to a public records request.

5. Precedent

48

¶89 Precedent instructs us that, as public records litigation is concerned, the Newspaper has not prevailed in substantial part in this action because the Commission acted with reasonable diligence.  See Racine Educ. Ass'n II, 145 Wis. 2d at 524.

¶90  In Racine Education Association I the Racine Education Association made a public records request to the Board of Education for the Racine Unified School District on May 18, 1984.  Racine Educ. Ass'n I, 129 Wis. 2d at 323.  The board did not respond, so the association filed a mandamus action on June 7, 1984.  Id.  Also on June 7, the board filed an answer to the mandamus petition, arguing that "it was exempt under sec. 19.35(1)(l), Stats., which states that compliance with a public records request is not mandated if a new record would need to be made by extracting information from existing records."  Id.  On June 22, 1984, the board "furnished the information" to the association.  Id.  Thereafter, the circuit court held that the action was moot and denied costs to the association.  Id.  The association appealed, seeking "attorney fees and costs."  Id.

¶91  The court of appeals held that the association was not entitled to attorney fees and costs under Wis. Stat. § 19.37(2) because it had not prevailed in substantial part.[29]  Racine Educ.

---

[29] In Racine Education Association I the court of appeals adopted a test for determining whether a plaintiff prevailed in substantial part and thus was entitled to reasonable attorney fees, damages, and other actual costs under Wis. Stat. § 19.37(2).  Racine Educ. Ass'n v. Bd. of Educ. for Racine Unified Sch. Dist., 129 Wis. 2d 319, 326-28, 385 N.W.2d 510 (Ct. App. 1986) ("Racine Educ. Ass'n I").  The court of appeals

Ass'n II, 145 Wis. 2d at 525. The court of appeals "conclude[d] that the request was filled as soon as practicable." Id. at 524. The court of appeals reasoned that "[t]he board presented evidence that three computer programs had to be written to extract the information from the archived computer tapes." Id. Further, "[t]here were duplication errors and the usual program 'bugs' to be corrected." Id. The public records request "was diligently, if not expediently, being worked on by several departments simultaneously." Id. at 523. "The board's position throughout has been that it was not required to turn over the information to [the association], but was doing so voluntarily . . . ." Id. Because "the failure to timely respond to a request was caused by an unavoidable delay accompanied by due diligence in the administrative processes," the association "has not substantially prevailed." Id. at 524.

¶92 Similarly, in the present case, the Commission responded with reasonable diligence to the Newspaper's public records request. Like the board in Racine Education Association, the Commission voluntarily released the requested information but maintained that it was not required to release information because no responsive record existed. In fact, the

---

remanded the matter for the circuit court to make factual findings. Id. at 329. On remand, the circuit court "awarded attorney's fees" to the association. Racine Educ. Ass'n v. Bd. of Educ. for Racine Unified Sch. Dist., 145 Wis. 2d 518, 525, 427 N.W.2d 414 (Ct. App. 1988) ("Racine Educ. Ass'n II"). On appeal the court of appeals in Racine Education Association II reversed, holding that the association was not entitled to attorney fees. Id.

50

Commission released the requested information about three weeks before being served with this lawsuit, one and a half months before filing an answer to the mandamus petition, and two months before drafting the meeting minutes at issue. Before the minutes were drafted, no record containing the requested information existed. The Commission was even more diligent than the board in Racine Education Association because the Commission responded twice to the Newspaper's request before the Newspaper filed this lawsuit, whereas the board did not respond prior to being sued.

¶93 Like the duplication errors and computer "bugs" that prevented the requested record from being created earlier in Racine Education Association, a clerical error may have contributed to the timing of the Commission's creation of a record. The Commission intended to approve the minutes for the February 20 special meeting at its next regular meeting on March 19, according to its standard practice for approving minutes. But it was unable to do so because the minutes had not been drafted in time for the March meeting. Commissioner Rogers——the Commission's part-time volunteer secretary who typically takes notes and drafts minutes for Commission meetings——was unable to take notes on the February 20 special meeting because he could not physically attend the meeting, which was called on short notice. Accordingly, the minutes were drafted shortly before and approved at the Commission's next regular meeting, on May 22, according to its standard practice. In fact, the Commission has maintained that it was not legally

51

required to create those minutes, but it created them anyway. These facts do not support the Newspaper's accusation that the Commission "deliberate[ly] fail[ed] to create the record" in order to avoid public scrutiny for its official acts.

¶94 The Commission's reasonable conduct stands in stark contrast to record custodians' conduct that resulted in awards of reasonable attorney fees, damages, and other actual costs in other cases brought under Wis. Stat. § 19.37. For example, in State ex rel. Vaughan v. Faust, 143 Wis. 2d 868, 422 N.W.2d 898 (Ct. App. 1988), an inmate named Ralph Vaughan made a public records request on January 26, 1987, seeking records of certain parole board staff meetings. Vaughan, 143 Wis. 2d at 869. Having received no response, Vaughan repeated his records request several weeks later on February 19. Id. Still having received no response, he filed a mandamus action approximately one month later on March 13. Id. Two weeks later, on March 31, the records custodian, Gail Faust, "supplied the requested information and apologized for her lateness in responding to his request." Id. Faust did not allege that the records did not exist at the time of the requests.

¶95 The court of appeals held that Vaughan was "entitled to costs, fees and damages under sec. 19.37(2) . . . ." Id. at 899. It reasoned that, "[a]fter Vaughan began this mandamus action, Faust complied with Vaughan's requests and, by letter, apologized for the delay. She gave no explanation for that delay." Id. at 872. "Faust voluntarily ceased her unexplained delay in complying with Vaughan's requests after he instituted

52

this mandamus action. Vaughan prevailed in substantial part." Id. at 873.

¶96 Similarly, a requester was awarded reasonable attorney fees, damages, and other actual costs in ECO, Inc., 259 Wis. 2d 276. In that case, ECO, Incorporated made a public records request to the City of Elkhorn on April 24, 1996, seeking engineering records. ECO, Inc., 259 Wis. 2d 276, ¶2. "ECO was looking for these records because of severe water problems occurring on its property[.]" Id. "ECO suspected the problems were caused by a disruption of either a man-made or natural underground flowage as a result of utility construction." Id. "[T]he City neither responded to the April 24, 1996 request nor produced the requested documents." Id., ¶24. In 1997 ECO sued the city to recover damages for the water damage to ECO's property. Id., ¶3 n.3.

¶97 After several years passed without a response to its 1996 public records request, ECO made an identical request on September 22, 2000. Id., ¶4. On October 16, 2000, the city denied the request, reasoning that the request improperly cited to the federal Freedom of Information Act instead of the Wisconsin public records law. Id., ¶4. On October 19, 2000, ECO repeated its request. Id., ¶5. On December 1, 2000, the city clerk stated that she would provide the requested records when they were ready. Id. "ECO never received any further response." Id. At ECO's suggestion, the district attorney's office contacted the city at least twice, urging it to release the requested records. Id. On March 8, 2001, having heard no

53

further response from the city, ECO filed a mandamus action under Wis. Stat. § 19.37. Id., ¶6. "The City conceded a lack of defense to the [public] records request" and offered to release the records upon payment of copying costs. Id., ¶8. On March 26, 2001, the city released the records to ECO. Id.

¶98 "Despite these disclosures, [ECO's chief executive officer, E. Christian Olsen] remained suspicious that additional records existed." Id., ¶9. Olsen went to city hall, where a city employee showed him that many of the records that he requested had not been disclosed. Id. Those records had been removed from the city engineer's office around the time ECO sued the city in 1997 over the water damage. Id. The records existed at the time of ECO's initial public records request in 1996. Id., ¶¶3 n.3, 9. Olsen informed the city attorney that many of his requested records had been withheld, and the city attorney stated that he would investigate the matter. Id., ¶10. On March 29, 2001, ECO sent a letter to the city attorney's office, requesting release of the withheld records. Id. The city attorney's office never responded. Id. ECO moved the circuit court to award "actual, consequential and punitive damages and costs and attorney's fees . . . ." Id., ¶11.

¶99 The court of appeals held that "ECO is entitled to costs, fees and damages pursuant to Wis. Stat. § 19.37(2)." Id., ¶30. It reasoned that, "under [Wis. Stat.] § 19.35(4)(a), receipt of [a public] records request triggers either a duty to respond to the request or a duty to produce the requested records." Id., ¶24. "The City did not provide any response

54

whatsoever [to ECO's initial request in 1996] and therefore did not comply with [public] records law."  Id.  "Because we conclude that both the April 24, 1996 letter and September 22, 2000 letter were, in fact, [public] records requests which were wrongfully denied, damages must be addressed."  Id., ¶30. "Because the City failed to respond to ECO's request and thus failed to comply with the requirements of Wis. Stat. § 19.35(4)(a), ECO is entitled to costs, fees and damages pursuant to Wis. Stat. § 19.37(2)."  Id.

¶100 Unlike the record custodians in Vaughan and ECO, the Commission acted with reasonable diligence in providing the requested information even when no record existed.  In addition to issuing a press release, the Commission voluntarily released the requested information before being served with this lawsuit and before creating a record containing that information. Further, the Commission released that information when it said that it would——shortly after it hired a new police chief.  By contrast, the custodian in Vaughan released the requested records after being sued, provided no reason for failing to release the requested records earlier, and apologized for not releasing the records sooner.  In ECO, after being sued, the city conceded that it had no defense against releasing the requested records.  Further, in ECO, the city still withheld some of the requested records and it ignored ECO's subsequent request to provide the records that had been withheld.

¶101 Furthermore, unlike the custodians in Vaughan and ECO, the Commission responded to the requests before being sued.  In

55

_Vaughan_ Vaughan made two identical requests several weeks apart, got no response to either request, and filed a mandamus action approximately two months after making the initial request. In _ECO_ the requester got no response after several years, so he made more requests and filed a mandamus action. Some of those later requests went unanswered. In the present case, the Commission issued a press release before receiving a public records request, responded to the Newspaper's first request within two weeks, and responded to the second request within two days. The Commission did not respond to the Newspaper's final request because the Newspaper filed this lawsuit only four days after making its final request. However, the Commission released the requested information to the Newspaper within six days of this lawsuit being filed, before being served and before any record existed.

¶102 A record custodian should not automatically be subject to potential liability under Wis. Stat. § 19.37(2)(a) for actively providing information, which it is not required to do in response to a public records request, to a requester when no record exists. While it might be a better course to inform a requester that no record exists,[30] the language of the public

---

[30] _See_ Wis. Dep't of Justice, _Wisconsin Public Records Law, Compliance Outline_, at 18 (Sept. 2012) (citing _State ex rel. Zinngrabe v. School Dist. of Sevastopol_, 146 Wis. 2d 629, 431 N.W.2d 734 (Ct. App. 1988)) ("If no responsive record exists, the records custodian should inform the requester" of that fact.), _available at_ http://www.doj.state.wi.us/sites/default/files/dls/public-records-compliance-outline-2012.pdf.

records law does not specifically require such a response. Indeed, custodians in ECO and Vaughan were liable for attorney fees, damages, and other actual costs, in part, because they did not respond at all to public records requests when responsive records existed at the time of the requests. Here, the Commission provided information to the Newspaper even though no record existed. The Commission's responses could have been better but the Newspaper's requests could have been clearer. To hold the Commission liable under § 19.37(2)(a) under the facts of this case would discourage, rather than encourage, communication between the government and a requester.

¶103 While the Newspaper is entitled to a timely response, it is without precedential support to argue that it was entitled to an immediate response. The Commission is under no obligation to create a record in response to a request. The Newspaper is not entitled to the release of information in response to a public records request. As we noted earlier, Wis. Stat. § 19.35(4)(a) allows a custodian a reasonable amount of time to respond to a public records request. Here, the Commission did not withhold a record or fail to timely respond; no record existed at the time of the request, the filing of the lawsuit, or even when the lawsuit was served.

## IV. CONCLUSION

¶104 We conclude that under the facts of this case, the Newspaper did not prevail in substantial part in this action and is therefore not entitled to reasonable attorney fees, damages, and other actual costs under Wis. Stat. § 19.37(2), because the

57

Commission did not unlawfully deny or delay release of the subject record. Whether the Commission violated the open meetings law is not properly before the court because the Newspaper did not request a district attorney to commence an action under Wis. Stat. § 19.97. Under Blum, 209 Wis. 2d 377, we may consider the Commission's defense that a responsive record did not exist at the time of the request even though the Commission first raised this defense in the mandamus action.

¶105 In other words, the Newspaper is not entitled to its requested relief because its request is not supported by the facts of this case or the law. Both parties contributed to any misunderstanding, if there was one, of what was being requested and the sufficiency of the responses. In any event, no responsive record existed at the time of the request and no record was produced because of the lawsuit. While a records request need not be made with exacting precision to be deemed a valid public records request, the Newspaper is a requester and wordsmith with experience and sophistication. Here, the requests could reasonably be perceived as seeking information, rather than a record. Although under no obligation to provide information in response to a records request, the Commission provided the Newspaper with the answers to its questions by providing information. Moreover, the subject request cites the open meetings law. The Commission initially denied the records requests but later agreed to provide, and did provide, the requested information. At the time of the request and at the time that the information was provided, no record existed that

could have been responsive to the request. The Newspaper no longer seeks production of a record; it seeks only reasonable attorney fees, damages, and other actual costs under Wis. Stat. § 19.37(2)(a). Whether a record should have been in existence at the time of the request is a matter of the open meetings law, not public records law. Certainly the Commission cannot avoid a public records request by failing to timely create a record. In this case, however, the Commission responded to the Newspaper with reasonable diligence and released the requested information while maintaining that it was not legally required to do so and at a time when no record existed. Neither the facts nor the law support the conclusion that the Newspaper prevailed in "substantial part."

*By the Court.*—The decision of the court of appeals is reversed.

¶106 DAVID T. PROSSER, J., did not participate.

¶107 SHIRLEY S. ABRAHAMSON, J. *(concurring).* The Newspaper no longer requests a record of the motion or votes cast at the Commission's closed meeting on February 20, 2012. The Newspaper obtained the information it was seeking about that meeting on March 22, 2012. This was six days after the Newspaper filed this mandamus action against the Commission under Wis. Stat. § 19.37(1)(a) (2011-12)[1] and 20 days before the Commission was served on April 22, 2012.

¶108 The Newspaper now seeks reimbursement under the public records law for the attorney fees, damages, and other actual costs it has incurred in bringing this mandamus action against the Commission.

¶109 For the reasons set forth, I conclude that the Newspaper is not entitled to recover reasonable attorney fees, damages, or other actual costs, even though the Newspaper is correct in many of its arguments about its compliance with the public records law and the Commission's noncompliance with that law. I write separately because the majority opinion confusingly skirts around the toughest issues presented and fails to provide needed guidance to record requesters, record custodians, litigants and their counsel, and courts.

¶110 This concurrence is organized into four parts.[2]

---

[1] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

[2] While there are many statements and discussions in the majority opinion with which I take issue, I have limited the scope of this concurrence to the subjects I consider most pressing.

1

¶111 First, I set forth the relevant provisions of the public records law (Wis. Stat. §§ 19.21-.39) and the open meetings law (Wis. Stat. §§ 19.81-.98).

¶112 Second, I consider whether the request submitted by the Newspaper constituted a valid record request under the public records law. I conclude that it did. Any implication in the majority opinion that the Newspaper's request was too poorly worded to constitute a valid record request is, in my view, misleading and plainly incorrect.

¶113 Third, I agree with the third-party amicus brief filed by the Wisconsin Department of Justice that the Commission was obligated to respond to the Newspaper's record request by stating that the requested record did not exist.

¶114 Fourth, I consider whether the Newspaper is entitled to recover reasonable attorney fees, damages, and other actual costs from the Commission. This is the primary issue presented in the instant case, and it turns on whether under Wis. Stat. § 19.37(2)(a), the Newspaper has prevailed "in whole or in substantial part" in its mandamus action against the Commission.[3]

¶115 The court of appeals remanded the matter to the circuit court to determine whether the Newspaper's mandamus action was a cause of the Commission's release of information on

---

[3] Wisconsin Stat. § 19.37(2)(a) provides in relevant part that "the court shall award reasonable attorney fees, damages of not less than $100, and other actual costs to the requester if the requester prevails in whole or in substantial part in any action filed under sub. (1) relating to access to a record or part of a record . . . ."

March 22, 2012, such that the Newspaper prevailed in substantial part in the mandamus action and is entitled to reasonable attorney fees, damages, and other actual costs.[4]

¶116 The Newspaper objects to the remand, contending that the Commission's failure to tell the Newspaper that the record it was requesting did not exist subjects the Commission to liability as a matter of law.

¶117 In my view, the Newspaper has not sufficiently tethered its argument to the language of Wis. Stat. § 19.37(2)(a), which grants attorney fees, damages, and other actual costs when a requester has prevailed in whole or in substantial part in a mandamus action. Thus, I conclude that the Commission's failure to inform the Newspaper that it was requesting a nonexistent record does not demonstrate as a matter of law that the Newspaper has prevailed in substantial part in its mandamus action against the Commission. Although it seems that the Newspaper was sandbagged, the Newspaper is not entitled to its requested relief.

I

¶118 I begin by examining the statutory framework underlying the present dispute.

---

[4] See WTMJ, Inc. v. Sullivan, 204 Wis. 2d 452, 458-59, 555 N.W.2d 140 (Ct. App. 1996) (explaining that when there is a causal nexus between the plaintiff's bringing a mandamus action and "the agency's surrender of the information," the plaintiff has prevailed in substantial part in the mandamus action).

¶119 I turn first to the public records law, Wis. Stat. §§ 19.21-.39. Several provisions of the public records law are significant in the instant case:

- Wisconsin Stat. § 19.31, the declaration of policy in the public records law, reflects Wisconsin's deep commitment to open and transparent government.[5] Section 19.31 provides that the policy of the public records law is to ensure that the public has access to "the greatest possible <u>information</u> regarding the affairs of government and the official acts of those . . . who represent them." (Emphasis added.) Section 19.31 further directs that the public records law "shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business."

- Wisconsin Stat. § 19.32(2) defines the word "record" broadly as "any material on which written, drawn, printed, spoken, visual, or electromagnetic information . . . ."

- Wisconsin Stat. § 19.35(1)(b) grants members of the public "a right to inspect a <u>record</u> and to make or receive a copy of a <u>record</u>. (Emphasis added.)

- Wisconsin Stat. § 19.35(1)(h) declares that a request to inspect, copy, or receive a copy of a record "is

---

[5] See <u>State v. Beaver Dam Area Dev. Corp.</u>, 2008 WI 90, ¶2, 312 Wis. 2d 84, 752 N.W.2d 295.

4

deemed sufficient" for purposes of the public records law "if it reasonably describes the <u>requested record or the information requested</u>." (Emphasis added.)

- Wisconsin Stat. § 19.35(4)(a) provides that the custodian of a record, upon receiving a record request, shall "as soon as practicable and without delay, either fill the request or notify the requester of the authority's determination to deny the request . . . and the reasons therefor."

- Wisconsin Stat. § 19.37(1) explains that if a written request for disclosure of a record is submitted but the custodian withholds the record or delays granting access to the record, then a mandamus action may be brought to compel the record's disclosure.

- Wisconsin Stat. § 19.37(2)(a) allows a requester to recover "reasonable attorney fees, damages of not less than $100, and other actual costs . . . if the requester prevails in whole or in substantial part" in a Wis. Stat. § 19.37(1) mandamus action.

¶120 While the instant case revolves primarily around the public records law, one provision of the open meetings law is also relevant. Specifically, because the Newspaper requested a record of the motion and vote of a governmental body, Wis. Stat. § 19.88(3) comes into play. Wisconsin Stat. § 19.88(3) requires that motions and roll call votes be recorded, stating: "The motions and roll call votes of each meeting of a governmental body shall be recorded, preserved and open to public inspection

5

to the extent prescribed in subch. II of ch. 19 [the public records law]."[6]

¶121 The distinction and interconnection between the public records law and the open meetings law are illustrated by State ex rel. Zinngrabe v. School District of Sevastopol, 146 Wis. 2d 629, 635, 431 N.W.2d 734 (Ct. App. 1988). In Zinngrabe, the court of appeals stated that the public records law "does not dictate which documents are to be created or direct the government to maintain specific records."[7] Instead, "[t]he duty to maintain such records and the enforcement of such duty" are grounded in the open meetings law.[8] The public records law governs the right to access records——not the creation of records.

¶122 With this statutory framework in mind, I turn to the substantive issues presented.

II

¶123 The first question presented is whether the Newspaper submitted a valid record request. I conclude that it did. My

---

[6] The Commission argues that Wis. Stat. § 19.88(3) does not apply in the instant case because the Commission's vote at its closed meeting on February 20, 2012, was not a roll call vote. The Commission overlooks, however, that Wis. Stat. § 19.88(3) also requires motions to be recorded. Regardless of whether the Commission's vote was a roll call vote, it was indisputably a vote on a motion that Wis. Stat. § 19.88(3) required to be recorded.

[7] State ex rel. Zinngrabe v. Sch. Dist. of Sevastopol, 146 Wis. 2d 629, 635, 431 N.W.2d 734 (Ct. App. 1988).

[8] Id.

conclusion is supported by the language of the request itself, by Wis. Stat. § 19.35(1)(h) (the provision governing the sufficiency of record requests), and by case law.

¶124 At a special meeting of the Commission held in closed session on February 20, 2012, a commissioner moved to reconsider candidates who had previously been eliminated from the pool of applicants for the open police chief position. The motion was made, seconded, and approved by a voice vote.

¶125 Later that day, the Commission issued a press release announcing its decision. According to the press release, the Commission had "determined that it preferred to have a broader pool of candidates moving forward." The press release did not state which commissioners had made, seconded, or voted in favor of the motion.

¶126 Shortly after the Commission issued its press release, the Newspaper published an article written by Christine Won, one of its reporters, regarding the Commission's decision to broaden its applicant pool. According to Won's article, certain members of the community were critical of the Commission's decision and were accusing the Commission of racial discrimination.

¶127 On February 22, 2012, two days after the Commission's special meeting, Won e-mailed the Commission to request a record of the motion and votes cast at the meeting.

¶128 Won had apparently been told to direct her "open records request" to the custodians of the record she was seeking. Accordingly, Won e-mailed the president and secretary of the Commission, asking "to know" how each Commissioner voted

at the special meeting.  Won's e-mail read in relevant part as follows:

> I was told to make my open records request directly to the custodians so am asking you as the president and secretary of the commission respectively.
>
> I am officially asking on the record to know the vote of each commissioner from the closed PFC meeting Monday in which they decided to reopen the police chief search.
>
> If you choose to deny, please provide a written explanation.

¶129 Won followed up with a second e-mail that same day. In her second e-mail, Won specifically requested "the <u>recorded</u> motions and votes of each [] commissioner at the closed meeting . . . ."    (Emphasis added.)    This e-mail read in relevant part as follows:

> Under statute 19.88(3) —— I am asking for the recorded motions and votes of each PFC commissioner at the closed meeting on Monday, including who made the motion and who seconded it.
>
> . . . .
>
> I would appreciate this information as soon as practicable and without delay.  If you choose to deny this request, please provide a written explanation.

¶130 These two e-mails constitute the record request at issue in the instant case.

¶131 Won's first e-mail clearly states the "information requested" by asking for "the vote of each commissioner from the closed PFC meeting Monday in which they decided to reopen the police chief search."  Won's second e-mail further specifies the "requested record" by asking for "the recorded motions and votes

8

of each [ ] commissioner at the closed meeting on Monday, including who made the motion and who seconded it." These e-mails make clear what Won was seeking and constitute a valid record request.

¶132 The majority opinion does not directly contradict this conclusion. However, it repeatedly implies that Won's e-mails were too imprecise to constitute a valid record request.

¶133 The majority opinion contends that "the requests could reasonably be perceived as seeking information, rather than a record."[9] It also observes that Won's second e-mail cited a provision of the open meetings law (Wis. Stat. § 19.88(3)) rather than the public records law.[10] Finally, the majority opinion characterizes the Newspaper as a "wordsmith with experience and sophistication," suggesting that record requests submitted by journalists must meet some special standard of clarity beyond that applied to other requesters.[11]

¶134 Any implication in the majority opinion that Won's e-mails did not constitute a valid record request is, in my view, plainly incorrect. I take this position for four basic reasons.

¶135 First, the request meets the standard for sufficiency set forth in Wis. Stat. § 19.35(1)(h). This section provides that a record request "is deemed sufficient if it reasonably describes the <u>requested record</u> or the <u>information requested</u>."

---

[9] Majority op., ¶8.

[10] <u>Id.</u>

[11] <u>Id.</u>, ¶¶8, 54, 83, 105.

9

(Emphasis added.) Case law explains that Wis. Stat. § 19.35(1)(h) does not require a record request "to contain any 'magic words' nor do[es it] prohibit the use of any words."[12] In the instant case, the record request reasonably described the record and information being requested and is therefore valid.

¶136 Second, the majority opinion's statement that Won's e-mails could reasonably be perceived as seeking information rather than a record is not persuasive.

¶137 In her first e-mail, Won explicitly characterizes her request as an "open records request." In her second e-mail, Won specifically requests "the <u>recorded</u> motions and votes of each [] commissioner at the closed meeting on Monday, including who made the motion and who seconded it." (Emphasis added.) In combination, these statements make clear that Won was not just requesting information that was not encapsulated in a record. She was requesting a record containing specific information, which she described in her e-mails.

¶138 Of course, what Won ultimately sought to obtain was information. But this fact does not undermine the validity of Won's record request.

¶139 A distinction can be drawn between requests for public records, which are governed by the public records law, and requests for information not contained in records, which are not

---

[12] <u>ECO, Inc. v. City of Elkhorn</u>, 2002 WI App 302, ¶23, 259 Wis. 2d 276, 655 N.W.2d 510 ("None of these statutes requires a request to contain any "magic words" nor do they prohibit the use of any words.").

subject to the public records law. However, the majority opinion goes too far and creates a false dichotomy between the two, suggesting that a request may be for either records or for information, but not for both.[13]

¶140 The words "record" and "information" are not mutually exclusive either in common parlance or under the public records law. Because the pursuit of information is the driving force behind record requests, the meanings of the two words are interconnected and overlapping in the context of the public records law.

¶141 For example, the declaration of legislative policy set forth at Wis. Stat. § 19.31 refers to the public's right under the public records law to access "information" regarding governmental business, providing that it is the state's public policy that "all persons are entitled to the greatest possible information . . . ."[14] To further that public policy, § 19.31 further provides that the public records law "shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business."[15]

---

[13] Majority op., ¶54 ("[T]he requests could reasonably be perceived as seeking information, rather than a record." (Emphasis added.))

[14] Wis. Stat. § 19.31.

[15] See also ECO, Inc., 259 Wis. 2d 276, ¶23 ("[T]he legislature's well-established public policy presumes accessibility to public records and mandates that open records laws be liberally construed to favor disclosure . . . .").

11

¶142 Likewise, Wis. Stat. § 19.35(1)(h) refers to both information and records, stating that a request for a public record is sufficient "if it reasonably describes the <u>requested record or the information requested</u>." (Emphasis added.) The express language of § 19.35(1)(h) contradicts the implication in the majority opinion that because Won's initial e-mail to the Commission described the information she was seeking but not the record she was seeking, she did not make a valid record request.

¶143 In short, the suggestion in the majority opinion that Won's e-mails could reasonably have been interpreted as requesting information rather than a record conflicts with the language and policy of the public records law. I conclude that Won's e-mails constitute a valid record request notwithstanding Won's ultimate goal of obtaining information.

¶144 Third, the majority opinion's reliance on Won's reference to Wis. Stat. § 19.88(3) (a provision within the open meetings law) to demonstrate that the request was not sufficient is misguided. Won's reference to § 19.88(3) does not render Won's record request invalid.

¶145 As previously explained, no particular words are prohibited in a record request, so no particular language or references necessarily invalidate a record request.[16] Thus, Won's reference to § 19.88(3), in and of itself, is not dispositive. This conclusion is supported by <u>ECO, Inc. v. City of Elkhorn</u>, 2002 WI App 302, ¶¶25-26, 259 Wis. 2d 276, 655

---

[16] <u>Id.</u>, ¶¶25-26.

12

N.W.2d 510, in which the court of appeals determined that although the request at issue referenced the federal Freedom of Information Act (FOIA) instead of the Wisconsin public records law, it was a valid record request under the Wisconsin public records law.

¶146 More importantly, Won's reference to the open meetings law (that is, to Wis. Stat. § 19.88(3)) was not necessarily incorrect. Section 19.88(3) provides that the motions and roll call votes of a governmental body shall be recorded, preserved, and open to public inspection pursuant to the extent prescribed in subchapter II of Chapter 19 (the public record law). In the instant case, Won sought a record of the motion and votes of the Commission at a special meeting held on February 20, 2012. Her reference to § 19.88(3) can be reasonably understood as indicating that she believed the motion and votes would be recorded and made available to her pursuant to § 19.88(3) and the public records law. Section 19.88(3) was, in short, highly relevant to Won's record request, and Won's reference to it does not invalidate her request.

¶147 Fourth, Won's status as a journalist for the Newspaper does not affect the validity of her record request whatsoever. Neither the statutes nor the case law support the notion that different types of requesters must meet different standards of clarity in order for their record requests to be deemed sufficient under the public records law.

¶148 In sum, for all the reasons set forth, I conclude that Won's e-mails constituted a valid record request under the

13

public records law.  Because Won reasonably described the record and information being requested, the record request was sufficient.  The majority opinion's suggestions to the contrary are misleading and unpersuasive.

III

¶149 I turn to the second question presented:  In responding to Won's record request, was the Commission obligated to explain that the requested record did not yet exist?  I conclude that it was.

¶150 Won's e-mails requested a record that was required to be created under Wis. Stat. § 19.88(3) but that had not yet been produced.[17]  The Commission did not tell Won that she had

---

[17] The Newspaper asserts not just that it had the right to obtain the record Won requested but also that it had the right to obtain the record _promptly_.  According to the Newspaper, the delayed creation of the record Won requested was one more example of the Commission's violating both the letter and the spirit of the public records and open meetings laws.

As the Wisconsin Department of Justice explains in its amicus brief, Wis. Stat. § 19.88(3) and parliamentary procedure strongly suggest that a governmental body must record all motions and votes at the time of the meeting or as soon thereafter as practicable.  More specifically, the Department interprets the statement in Wis. Stat. § 19.35(4)(a) that a response must be provided "as soon as practicable and without delay" as follows:

> DOJ policy is that ten working days generally is a reasonable time for responding to a simple request for a limited number of easily identifiable records.  For requests that are broader in scope, or that require location, review or redaction of many documents, a reasonable time for responding may be longer.  However, if a response cannot be provided within ten working days, it is DOJ's practice to send a

14

requested a nonexistent record.  Instead, the Commission sent Won two e-mails stating that it was denying Won's record request for public policy reasons.  The e-mails set forth two different reasons for the denial, both of which the Commission has since abandoned.

¶151 The Commission's first e-mail cited a case that held that a vote in a closed governmental meeting "merely formalizes the result reached in the deliberating process,"[18] implying that the Commission believed the commissioners' vote was not required to be recorded.  The Commission's second e-mail cited public

communication indicating that a response is being prepared.

Wis. Dep't of Justice, Wis. Public Records Law:  Wis. Stat. §§ 19.31-19.39 Compliance Outline at 13 (Sept. 2012), available at http://tinyurl.com/ljx49na (last visited June 15, 2015).

Requiring motions and votes to be promptly recorded furthers the policy of providing meaningful public access to information about governmental decisions and decision-making processes.  See Wis. Stat. §§ 19.31, 19.81.  In contrast, construing Wis. Stat. § 19.88(3) as imposing no mandatory timeframe for recording a governmental body's motions and votes would render toothless the requirement that such motions and votes be recorded and would enable governmental bodies to deprive the public of meaningful access to important information by indefinitely postponing a record's creation.

With this in mind, I conclude that the record Won requested was not timely created by the Commission.  The minutes of the February 20, 2012, Commission meeting, at which the motion to reopen the police chief applicant pool was made, seconded, and approved by a voice vote were not made available for public inspection until May 22, 2012, three months after the meeting took place.

[18] State ex rel. Cities Serv. Oil Co. v. Bd. of Appeals, 21 Wis. 2d 516, 539, 124 N.W.2d 809 (1963).

15

policy reasons for denying Won's request, including concerns about the commissioners' well-being if their votes were made public.

¶152 By providing these reasons for its denial of Won's record request, the Commission implied that the requested record existed but was being withheld. The Newspaper responded to the Commission's apparent withholding of the record by filing a mandamus action to compel disclosure of the record. The Commission knew, but the Newspaper did not know, that the record did not exist.

¶153 Had the Commission informed Won that the record she had requested did not exist, the Newspaper would have known it could not compel the Commission to disclose the nonexistent record under the public records law. Consequently, the Newspaper would not have filed a futile mandamus action under Wis. Stat. § 19.37(1)(a). It could instead have sought to compel the Commission to create the record under the open meetings law.

¶154 In short, this litigation was spawned by the Commission's failure to inform Won that the record she requested did not exist. Indeed, in this court, the Commission's primary arguments to defeat the Newspaper's claims rest on the fact that the record did not exist, not that the Commission acted reasonably or in good faith.

¶155 Unfortunately, the breakdown in communication that underpins the present case seems likely to recur in other cases. Requests for public records are common, and some requests will

16

inevitably be filed for nonexistent records. The instant case therefore presents this court with a valuable opportunity to provide guidance to record custodians on how best to respond to requests for nonexistent records. The majority opinion fails to seize this opportunity.

¶156 I would adopt the position advocated by the Wisconsin Department of Justice in its amicus brief: In the simple scenario in which a record custodian knows it has no responsive record, the custodian must notify the requester as soon as practicable and without delay that the requested record does not exist.[19]

¶157 My conclusion is supported by the text of the public records law itself.

_____

[19] The Wisconsin Department of Justice plays a special role with regard to the public records law. The legislature has accorded the Attorney General, who supervises and directs the Department of Justice, special significance in interpreting the public records law. The legislature has specifically authorized the Attorney General to advise any person about the applicability of the law. Wis. Stat. § 19.39. The Attorney General has not issued a formal or informal opinion letter or other document regarding the issue presented in the instant case. Rather, the Department of Justice has filed a nonparty brief expressing its view. The Attorney General's opinion, advice, and brief are not binding on this court, but we may give them persuasive effect. See Juneau County Star-Times v. Juneau County, 2013 WI 4, ¶36 n.18, 345 Wis. 2d 122, 824 N.W.2d 457.

Furthermore, the Department of Justice has issued a document entitled Wisconsin Public Records Law (Compliance Outline) that assists government entities and the public in interpreting and applying the public records law. See Wis. Dep't of Justice, Wis. Public Records Law: Wis. Stat. §§ 19.31-19.39 Compliance Outline (Sept. 2012), available at http://tinyurl.com/ljx49na (last visited June 15, 2015).

17

¶158 The public records law is clear that a record custodian need not create a record simply to fill a record request; the duty to create a record must be found elsewhere.[20] The public records law is silent, however, regarding what a record custodian should say in response to a request for a nonexistent record. I conclude that the only reasonable interpretation of the public records law is that a record custodian must notify the requester when no responsive record exists.

¶159 My reasoning is as follows.

¶160 Under Wis. Stat. § 19.35(4)(a), "[e]ach authority, upon request for any record, shall, as soon as practicable and without delay, either fill the request or notify the requester of the authority's determination to deny the request in whole or in part <u>and the reasons therefor</u> (emphasis added)." The statutory options are, therefore, to comply with the record request or to deny it and provide an explanation. A refusal to grant access to the requested record amounts to a denial of the request.

---

[20] <u>See</u> <u>Zinngrabe</u>, 146 Wis. 2d at 635.

18

¶161 In explaining a decision to deny a record request, a record custodian must be forthright and specific.[21]

¶162 To pay heed to the legislative declaration of policy that the public is "entitled to the greatest possible information regarding the affairs of government,"[22] and to meet the record custodian's responsibility of explaining with specificity a refusal to grant access to a record, a record custodian faced with a request for a record that the custodian knows (or should know) does not exist must promptly inform the requester that the record does not exist.

¶163 My conclusion is supported by written guidance that the Wisconsin Department of Justice has provided to the public on complying with the public records law.  The Department of Justice has explained that "[t]he public records law does not require authorities to create new records in order to fulfill public records requests," but "[i]f no responsive records exist, the authority should say so in its response."[23]

---

[21] See Newspapers, Inc. v. Breier, 89 Wis. 2d 417, 427, 279 N.W.2d 179 (1979) (providing that if a record custodian denies a record request, "he must state specific public-policy reasons for the refusal," which will "provide a basis for review in the event of court action").  See also State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI 58, ¶¶53-57, 271 Wis. 2d 633, 681 N.W.2d 110 (discussing the common, dictionary, plain meaning definition of the word "refusal" in a different statute).

[22] Wis. Stat. § 19.31.

[23] Wis. Dep't of Justice, Wis. Public Records Law: Wis. Stat. §§ 19.31-19.39 Compliance Outline at 1, 15, 17-18 (Sept. 2012), available at http://tinyurl.com/ljx49na (last visited June 15, 2015).

19

¶164 Considerations of common sense and judicial efficiency further support my conclusion. Notifying a requester that a requested record does not exist "avoids confusion and the appearance of delay, and decreases the likelihood of unnecessary litigation."[24] A record custodian who knows that a requested record does not exist but fails to inform the requester of that fact invites the requester to repeat the follies of the Newspaper in the instant case. A diligent requester will seek in vain to compel disclosure of a nonexistent record by filing a mandamus action.

¶165 It is easy for custodians to comply with the obligation to inform a requester of the nonexistence of a record. Record custodians are already required to respond to valid record requests under Wis. Stat. § 19.35(4)(a). Why shouldn't record custodians faced with requests for nonexistent records tell the truth in response to such requests by explaining that the records do not exist?

¶166 In sum, the Commission was obligated to inform Won that the record she requested did not exist. The Commission failed to fulfill that obligation, spurring the unnecessary and protracted litigation now before this court and causing both the Newspaper and the Commission to incur unnecessary expenses.

IV

---

[24] Non-Party Brief of the Wisconsin Department of Justice, at 12.

20

¶167 I turn, finally, to the question of whether the Newspaper is entitled to recover reasonable attorney fees, damages, and other actual costs incurred in the instant mandamus action against the Commission. I conclude that it is not.

¶168 Pursuant to Wis. Stat. § 19.37(2)(a), the Newspaper can recover reasonable attorney fees, damages, and other actual costs only if it has prevailed in whole or in substantial part in its mandamus action against the Commission. Section 19.37(2)(a) provides in relevant part as follows:

> **(2) Costs, fees, and damages.** (a) Except as provided in this paragraph, the court shall award reasonable attorney fees, damages of not less than $100, and other actual costs to the requester if the requester prevails in whole or in substantial part in any action filed under sub. (1) relating to access to a record or part of a record under s. 19.35 (1)(a).

¶169 The public records law is silent with regard to the remedy available when a requester is induced to file a mandamus action under Wis. Stat. § 19.37(1)(a) by what the Newspaper characterizes as a custodian's misleading responses to a record request. The Newspaper asserts that it reasonably believed that the Commission's stated reasons for denying the record request were invalid and that the Newspaper was therefore justified in commencing the present mandamus action.

¶170 According to the Newspaper, failing to order the Commission to reimburse the Newspaper would reward the Commission for its obfuscation and would allow custodians to flout the procedural requirements and purpose of the public records law with impunity. According to the Commission, the

21

nonexistence of the record eliminates the potential for any liability whatsoever under the public records law.

¶171 The Newspaper's argument has merit. By declining to grant the Newspaper its requested relief, this court runs the risk of discouraging the Newspaper and other record requesters from seeking to enforce their right to access public records in the future for fear of incurring the substantial attorney fees and costs the Newspaper now faces. This result would be antithetical to the purposes of the public records law.

¶172 Public policy supports granting the Newspaper's request for reimbursement of reasonable attorney fees, damages, and other actual costs even if, as the Commission would have us believe, the Commission simply made a mistake, with no malicious intent, and did not attempt to cover up an official act. "Practical realities dictate that very few of our citizens have the ability to be personally present during the conduct of government business. If we are to have an informed public, the media must serve as the eyes and ears of that public."[25] The danger is that the media will not serve in this role if the financial risk is too great.

¶173 Nevertheless, I conclude that the statutes do not afford the Newspaper the relief it seeks.

¶174 Wisconsin Stat. § 19.37(2)(a) requires that the Newspaper must prevail in whole or in substantial part in its

---

[25] State ex rel. Newspapers, Inc. v. Showers, 135 Wis. 2d 77, 81, 398 N.W.2d 154 (1987).

22

mandamus action against the Commission to be awarded fees and costs.

¶175 Relying on case law, the court of appeals remanded the matter to the circuit court to determine whether the Newspaper's mandamus action was a cause of the Commission's release of information on March 22, 2012, such that the Newspaper prevailed in substantial part in its mandamus action and is entitled to reasonable attorney fees, damages, and other actual costs.[26]

¶176 The Newspaper objects to the decision of the court of appeals, which remanded the matter. The Newspaper urges that as a matter of law, it has prevailed in substantial part in its mandamus action against the Commission. According to the Newspaper, the Commission is precluded from abandoning the reasons set forth in its initial denials of Won's record request and from belatedly arguing that the requested record did not exist. The Newspaper argues that the Commission is bound by its misleading responses and now has no remaining defense at all.

¶177 The essence of the Newspaper's argument is that the Commission violated the public records law by failing to inform Won that the record she had requested did not exist and that the law must provide a remedy for that violation.

¶178 Although it tries, the Newspaper cannot successfully tether its argument for fees, damages, and costs to the language

---

[26] See WTMJ, Inc., 204 Wis. 2d at 458-59 (explaining that when there is a causal nexus between a mandamus action and "the agency's surrender of the information," the plaintiff has prevailed in substantial part in the mandamus action).

of Wis. Stat. § 19.37(2)(a). Section 19.37(2)(a) provides plaintiffs with the right to recover reasonable attorney fees, damages, and other actual costs only under the circumstances specified in the statute: when plaintiffs prevail in whole or in substantial part in a Wis. Stat. § 19.37(1) mandamus action. The record in the instant case does not satisfy this statutory requirement because the Newspaper has not demonstrated that it prevailed in whole or in substantial part in its mandamus action. Furthermore, the Newspaper does not seek a remand as the court of appeals ordered. Accordingly, I reluctantly conclude that the Newspaper is not entitled to the reasonable attorney fees, damages, and other actual costs that it requests under the public records law.

¶179 I would be remiss if I did not comment on the majority opinion's misguided discussion of State ex rel. Blum v. Board of Education, 209 Wis. 2d 377, 386, 565 N.W.2d 140 (Ct. App. 1997). In Blum, a requester asked for a copy of a student's academic records. The custodian refused to release the student's records, but in its response failed to cite the statutory provision that grants students the right to keep their records private.[27] The court of appeals concluded that a refusal to release a record for an inadequate reason "does not prevent a

---

[27] Wisconsin Stat. § 19.36(1) provides that "[a]ny record which is specifically exempted from disclosure by state or federal law or authorized to be exempted from disclosure by state law is exempt from disclosure under s. 19.35(1) . . . ."

Chapter 118 of the Wisconsin Statutes, applicable in Blum, mandates confidentiality of pupil records.

24

court from determining whether a 'clear statutory exception' applies" to support the refusal.[28]

¶180 <u>Blum</u> hinged on an express statutory exception to the mandate of Wis. Stat. § 19.35. The express statutory exception implicated the privacy rights of a third party.[29] <u>Blum</u> does not apply in the instant case. Try as it might, the majority opinion cannot locate a clear statutory exception applicable to the present case. Instead, the majority opinion cobbles together several provisions and in a conclusory fashion opines that "a record's non-existence provides a clear statutory exception to disclosure under the public records law."[30]

¶181 In <u>Blum</u>, the applicability of the statutory exception should have been obvious and well known to the requester, the custodian, and the courts. In the instant case, whether the record existed was uniquely known only to the Commission, not to the Newspaper or the courts. In the instant case, unlike in <u>Blum</u>, the custodian (the Commission) did not provide sufficient notice to the requester (the Newspaper) to enable it to challenge the denial of its record request and did not provide a basis for judicial review.

¶182 In sum, I conclude that the Newspaper submitted a valid record request; that the Commission was obligated to, but

---

[28] <u>State ex rel. Blum v. Bd. of Educ., Sch. Dist. of Johnson Creek</u>, 209 Wis. 2d 377, 388, 565 N.W.2d 140 (Ct. App. 1997).

[29] <u>See</u> Wis. Stat. § 118.125(1)(c), (d) & (2).

[30] Majority op., ¶73.

25

did not, respond truthfully to the Newspaper's record request by explaining that the record did not exist; and that on this record, despite the Commission's failure to promptly inform the Newspaper that the record did not exist, the Newspaper is not entitled as a matter of law to recover attorney fees, damages, or other actual costs under the public records law. The record before the court does not fulfill the requirements set forth at Wis. Stat. § 19.37(2)(a) and in the case law.

¶183 For the reasons set forth, I write separately.

¶184 I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

26